STATE OF CONNECTICUT *v.* JERRY ESTEP

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and WRIGHT, Js.

Argued January 5—decision released April 13, 1982

*Alan D. McWhirter,* assistant public defender, with whom, on the brief, was *Raymond J. Quinn, Jr.,* public defender, for the appellant (defendant).

*Bradford J. Ward,* assistant state's attorney, with whom, on the brief, were *Francis M. McDonald, Jr.,* state's attorney, and *William L. Stevens,* legal intern, for the appellee (state).

WRIGHT, J. The sole question in this appeal is whether the trial court adequately instructed the jury concerning the testimony of an accomplice. The defendant was arrested on November 3, 1976. On November 22, 1976, he pleaded not guilty to a three count information which charged larceny in the first degree; General Statutes § 53a-122; conspiracy to commit larceny in the first degree; General Statutes § 53a-48; and burglary in the third degree. General Statutes § 53a-103. A jury trial followed. When, after deliberation, the jury reported itself deadlocked, a mistrial was declared. A second trial was held, at the close of which the jury returned a verdict of guilty on all three counts. Judgment was rendered accordingly.

Thereupon the defendant filed a motion in arrest of judgment and motion for acquittal. Both motions were denied. The trial court then sentenced the defendant to an effective term of not less than five, nor more than ten years.

The defendant has appealed from this judgment, claiming that the trial court's charge to the jury was inadequate on the subject of the testimony of an accomplice.

The evidence presented would permit the jury to find the following facts: On the evening of December 28, 1975, Raymond Duffy, Melvin Brokaw and the defendant met at the Waterbury Holiday Inn. From there they proceeded to Fortin's Restaurant

in Naugatuck in the defendant's automobile. In the early morning hours of December 29, 1975, the defendant dropped off Duffy and Brokaw on a side street near Fortin's with the defendant planning to return in two hours. Duffy and Brokaw then broke into Fortin's emptied the restaurant safe and returned with the proceeds to the side street. At that point they were picked up by the defendant. They then drove to Brokaw's apartment in Bristol, where they divided the proceeds.

The state's case rested primarily on the testimony of Duffy, a self-confessed accomplice of the defendant with a felony record spanning a twenty-four year period. At the close of the second trial, the defendant filed a request to charge concerning Duffy's testimony. The trial court charged the jury,[1] and the defendant excepted to the court's allegedly inadequate coverage of the issues raised by the defendant's request.

---

[1] The trial court charged in part:

"Now, the credibility of a witness may be impaired or completely disproved by impeaching testimony. It may be impaired by cross examination. It may be affected by the appearance of the witness upon the stand, by his interest, by his apparent bias, by his evident ignorance as to the facts to which he testified. You are to consider all these matters in weighing the testimony in this case.

"It is neither a doctrine nor a rule of law that the jury must disregard all the evidence of a discredited witness. The jury may do so, however, if it finds the witness to be unworthy of belief in all respects.

"The jury is the sole arbiter of what testimony is to be believed and what testimony is to be rejected. This includes the right to believe part of the testimony and to reject the remainder.

"In weighing the testimony of a witness, you should consider his appearance and demeanor on the stand as it bears on credibility. You should keep in mind all those little circumstances which point to his truthfulness or untruthfulness. You should consider any possible bias or prejudice he may have, whether for or against the State or for or against the accused, his interest or lack of interest

On this appeal the defendant contends that the trial court, in its charge, should have warned the jury to proceed "with caution" in assessing Duffy's credibility. He further maintains that the trial court did not offer "clear and forceful cautionary instructions" on the question of the interest Duffy may have had in giving his testimony.

Initially, it should be noted that " ' "[a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case." ' " *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); *Amato* v.

of whatever sort in the outcome of the trial, his ability or lack of ability to observe facts correctly and to remember and relate them here accurately. . . .

"Testimony was presented by the State through Mr. Raymond Duffy. Mr. Duffy admitted his participation in the burglary and larceny at Fortin's Restaurant on December 29, 1975. In doing so, he implicated a Mr. Brokaw. He further implicated the defendant Jerry Estep by his testimony.

"Now, in the eyes of the law Mr. Duffy is known as an accomplice, that is, one who participated with another or others in the commission of a crime.

"It is the law in Connecticut that as regards the testimony of an accomplice, that is within the power of the trier, be it the Court or the jury—in this case as the jury you are the trier—therefore, it's within your power to convict an accused upon the uncorroborated testimony of an accomplice to a crime, provided the jury believes from his evidence that the crime charged has been proven against the accused beyond a reasonable doubt.

"The testimony of an accomplice, if it is uncorroborated, should, of course, be scrutinized very carefully before being accepted or rejected by the jury. It's within your province, having observed and listened to the testimony presented by Mr. Duffy, to determine whether it is worthy of belief.

"Further, as regards the testimony of Mr. Duffy, on the question of credibility, you may consider the fact that he has a record of felony convictions. Evidence that he has is proper for you to weigh in judging his credibility."

*Desenti,* 117 Conn. 612, 617, 169 A. 611 (1933). The charge is to be read as a whole and individual instructions are not to be judged in "artificial isolation" from the overall charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978); *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Mullings,* 166 Conn. 268, 274–75, 348 A.2d 635 (1974).

The defendant correctly points out that the inherent unreliability of accomplice testimony ordinarily requires a particular caution to the jury. *State* v. *Ferrara,* 176 Conn. 508, 512, 408 A.2d 265 (1979); *State* v. *Colton,* 174 Conn. 135, 140, 384 A.2d 343 (1977); *State* v. *Pecciulis,* 84 Conn. 152, 158–59, 79 A. 75 (1911). We cannot agree, however, that the trial court failed to fulfill its duty. In *State* v. *Carey,* 76 Conn. 342, 349, 56 A. 632 (1904), we stated: "The conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the duty of the judge to specially caution the jury . . . ." The relevant "conditions of character and interest" in the present matter were Duffy's status as a self-confessed accomplice with a criminal record and his possible interest in favorable treatment by the state. The trial court drew the jury's attention to these factors.

The defendant requested the trial court to charge, in part, that "the jury must look with par-

ticular care at the testimony of an accomplice and scrutinize it very carefully before they accept it. Indeed, in most cases it would be unsafe to rely upon the testimony of an accomplice alone which was uncorroborated." In charging the jury, the trial court adequately covered these points. It informed the jury that "it's within your power to convict an accused upon the uncorroborated testimony of an accomplice to a crime, provided the jury believes from his evidence that the crime charged has been proven against the accused beyond a reasonable doubt." The trial court, however, urged the jury that Duffy's testimony should be "scrutinized very carefully before being accepted or rejected" and that they could "consider the fact that [Duffy] has a record of felony convictions." Further, in discussing the credibility of witnesses in general, the trial court noted that, when weighing the testimony of any witness, "[y]ou should consider any possible bias or prejudice he may have, whether for or against the State or for or against the accused, his interest or lack of interest of whatever sort in the outcome of the trial . . . ." We conclude that, read as a whole, the charge provided the jury with sufficient warning. The fact that the charge did not follow precisely that requested by the defendant does not constitute error where the point is covered fairly in the charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978); *State* v. *Avila,* 166 Conn. 569, 574, 353 A.2d 776 (1974); *State* v. *Alterio,* 154 Conn. 23, 27, 220 A.2d 451 (1966).

There is no error.

In this opinion the other judges concurred.