STATE OF CONNECTICUT *v.* JAMES J. SIANO
(6799)

DALY, NORCOTT and FOTI, Js.

Argued October 18—decision released December 19, 1989

---

*John S. Pinney,* with whom was *Thomas E. Gaffey,* for the appellant (defendant).

*John O'Meara,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Warren Gower,* assistant state's attorney, *Paul Gaetano,* deputy assistant state's attorney, and *Michael E. O'Hare,* special assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the jury verdict convicting him of burglary in the second degree in violation of General Statutes § 53a-102 and larceny in the second degree in violation of General Statutes § 53a-123. He claims that the trial court erred (1) in failing to require the state to produce the criminal history of one of its witnesses, Carmine Sarno, or, in the alternative, in failing to strike his testimony, and (2) in failing to instruct the jury on the issue of credibility of an accomplice witness. We find no error.

I

The following facts are relevant to the first issue of this appeal. At trial, the state called Carmine Sarno as a witness. Sarno testified that on the evening of May 25, 1986, he picked up the defendant at his home in Springfield, Massachusetts, and the two drove to Enfield, looking for a house to burglarize. Sarno stated that, at the defendant's suggestion, they selected a house on Lois Lane, the home of Joanne and Albert Kneiss.

Sarno said that at approximately 8 p.m. he parked his vehicle on the street behind the targeted house.

Sarno and the defendant then entered the Kneisses' backyard and unsuccessfully attempted to pry open sliding glass doors leading into the house. They eventually were able to enter through a kitchen window. The Kneisses were not at home at that time.

According to Sarno's testimony, the defendant went upstairs to search for items to steal while Sarno searched the first floor. Sarno eventually met the defendant upstairs where they discovered a personal computer; the defendant suggested that they take it, and Sarno agreed. Sarno took the computer from the house and put it in his car.

Sarno then returned to the house to help the defendant collect additional items. When they left the house, the defendant was carrying a pillowcase full of jewelry and various other items.

On direct examination by the state, Sarno testified that he had pleaded guilty to this and other Connecticut burglaries. He testified that he had been incarcerated as a result of those pleas, but had been released early. Sarno also testified that he was waiting to be sentenced for other burglaries in Massachusetts and that the Massachusetts prosecutors had made no promises to him.

At the conclusion of this testimony, the defendant moved, pursuant to Practice Book § 744, for disclosure of Sarno's record of felony convictions and of any pending felony and misdemeanor charges. He also moved, in the alternative, that Sarno's testimony be stricken. The court denied both motions, and the defendant excepted. The state, in response to the defendant's expressed concerns, moved to reopen direct testimony to elicit more specific information from the witness about his criminal history. The court allowed this questioning.

During this additional direct examination, Sarno testified that he had no Massachusetts felony convictions but that there were eighty to ninety burglary charges pending against him in Massachusetts at the time of his testimony. During cross-examination, defense counsel questioned Sarno extensively about his criminal history and his motive for testifying.

The defendant claims that it was error for the trial court to deny his request, made at the close of direct examination, for disclosure of Sarno's criminal history pursuant to Practice Book § 744. He argues that because this information was readily available to the state, the trial court erred in ruling that the state had revealed "all it knew" about Sarno's record. The defendant asserts that he should not be required to rely upon the testimony of a witness whom he intends to impeach to provide reliable information about his criminal record. The state counters this argument by asserting that it complied with § 744 by eliciting from the witness information about his own criminal history.[1] It contends that it disclosed all the information that was known, and it does not bear the burden of obtaining more information for the defendant.

The trial court, after repeatedly asking the state's attorney if he had disclosed all that he knew about Sarno's record of felony convictions and pending charges, accepted the state's affirmative response and ruled that the state had complied with Practice Book § 744. We find no error.

---

[1] The state, alternatively, argues that this claim should not be reviewed because it deals with a discovery motion that is properly a pretrial motion, and the defendant's motion for disclosure was untimely because he waited until after direct examination. This argument is without merit. Practice Book § 744 clearly places an affirmative duty on the state to disclose the criminal history of its witnesses after they have testified on direct examination. The state recognized this requirement with its concession during oral argument.

Legal conclusions made by the trial court must stand unless they are legally and logically inconsistent with the facts. *State* v. *Williamson,* 10 Conn. App. 532, 537, 524 A.2d 655, cert. denied, 204 Conn. 801, 525 A.2d 965 (1987). This court may reject a factual determination by the trial court only if it is clearly erroneous. Id.; see also *Cook* v. *Nye,* 9 Conn. App. 221, 225, 518 A.2d 77 (1986).

The trial court first made the legal conclusion that the state's attorney was required to disclose the records of felony convictions and pending charges of the state's witness that were known to the state. This conclusion is supported by the plain language of Practice Book § 744.

Practice Book § 744 requires that "[a]fter a witness called by the state has testified on direct examination, the prosecuting authority *shall disclose* any record of felony convictions of the witness *known to the prosecuting authority* and any record of felony or misdemeanor charges pending against the witness *known to the prosecuting authority.*"[2] (Emphasis added.) This language plainly requires that the prosecutor release all such information in his possession. Indeed, the state has an affirmative duty to disclose, but that duty is not unlimited. There is no authority that would require him to procure further information for the defendant.[3]

The court then made the factual finding as to whether the prosecutor had revealed all of the information

[2] Although in *State* v. *Whitaker,* 202 Conn. 259, 265, 520 A.2d 1018 (1987), our Supreme Court cites Practice Book § 744 as the rule governing the discovery of information "at the trial court's discretion," it is clear from the language of that rule that there is no judicial discretion involved. The language of the rule mandates disclosure. See Practice Book § 744.

[3] The defendant could have filed a pretrial discovery motion pursuant to Practice Book § 741 and attempted to make a showing of materiality. Under Practice Book § 744, however, this is neither necessary nor appropriate. The prosecutor has an affirmative duty to release only that information that he knows.

known to him or whether he had failed to comply with
§ 744 by withholding information. After the defendant
moved for disclosure, the trial court asked the state's
attorney: "Mr. Gaetano, are you saying that's all that's
been testified to and that's all you know? Is that cor-
rect?" The state responded affirmatively, and the court
instructed defense counsel: "You have to take [the
state's attorney] at his word. If you have other infor-
mation that there are other charges pending against
the witness somewhere else or other convictions . . .
that's another thing." The defendant offered no "other
information," and the court ruled that the prosecut-
ing authority, while under an obligation to disclose the
records of his witnesses of which he is aware, is not
under any obligation to obtain information for the
defendant.

The court then, as a point of emphasis, asked the
state's attorney, "Mr. Gaetano, as an officer of the
court, as the state's attorney's office, has the state's
attorney's office turned over—has it disclosed the rec-
ord of felony convictions of this witness known to it
and any pending felony or misdemeanor crimes known
to you?" The state responded, "Yes, Your Honor. The
state has brought that out on direct examination, and
will be willing to be more specific in further inquiry."
After reiterating the question and receiving the same
answer, the court overruled the defendant's motion to
strike and also implicitly found that the state's attor-
ney had complied with § 744 by revealing all that he
knew about his witness' criminal record. This colloquy
between the court and the state's attorney makes it
clear that the trial court's finding that the state
revealed all that was within its knowledge was factu-
ally supported by the evidence. That ruling, therefore,
is not clearly erroneous. See *Cook* v. *Nye,* supra.

In his attempt to prove that the state had access to
more information than it provided regarding Sarno's

criminal history, the defendant asks this court to take judicial notice of the transcript from the sentencing proceedings of Sarno on his Connecticut charges. The defendant, however, never brought this information to the attention of the trial court, even after having been prompted by the court.

As a general rule, this court will not take judicial notice of facts that were not available to the trial court at the time of trial. *State* v. *McCarthy,* 197 Conn. 247, 249 n.2, 496 A.2d 513 (1985). "The true concept of what is judicially known is that it is something which is already in the court's possession or, at any rate, is so accessible that it is unnecessary and therefore time wasting to require evidence of it. . . . Judicial notice, therefore, in its appropriate field, meets the objective of establishing facts to which the offer of evidence would normally be directed." (Citation omitted.) *State* v. *Tomanelli,* 153 Conn. 365, 368, 216 A.2d 625 (1966).

This is not an appropriate case for judicial notice. The transcript that the defendant seeks to have judicially noticed was never made available to or brought to the attention of the trial court. Compare *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 552 A.2d 796 (1989) (where reviewing court took judicial notice of documents in Superior Court file); *Scott* v. *Scott,* 190 Conn. 784, 462 A.2d 1054 (1983) (where reviewing court took judicial notice of facts which were in the Superior Court record for that same case); *Farm Bureau Mutual Auto Ins. Co.* v. *Kohn Bros. Tobacco Co.,* 141 Conn. 539, 107 A.2d 406 (1954) (judicial notice taken of another court's file because file was referred to in stipulated facts). Further, it does not contain the type of information that is commonly known or generally accepted. Compare *State* v. *Zayas,* 195 Conn. 611, 614, 490 A.2d 68 (1985) (time of sunrise and sunset judicially noticed); *State* v. *Erickson,* 574 P.2d 1, 7 (Alaska 1978) (holding that scientific facts are judicially noticeable).

Because the trial court was unaware of this transcript and because it did not contain generally known facts, we will not take judicial notice of it. To do so would be inconsistent with our function as an appellate court and unfair to the trial court. See *State* v. *McCarthy,* supra.

We find that the trial court's ruling was legally correct. Further, based upon the facts before that court, the ruling was factually supported. There is no error.

## II

The defendant next claims that the trial court erred in failing to instruct the jury specifically on the credibility of accomplice testimony. The defendant requested that the jury be instructed, in accordance with *State* v. *Shindell,* 195 Conn. 128, 486 A.2d 637 (1985), that, in assessing the credibility of an accomplice, it should scrutinize that testimony, bearing in mind that the accomplice-witness may have an interest in the outcome of the case.

The state argues that this claim is not reviewable because the defendant did not take exception to the instruction as given, thereby forfeiting his right to appellate review of this issue. The state further contends that if the claim is reviewed, the defendant is not entitled to the instruction requested because Sarno, although admittedly an accomplice, had been released from confinement prior to trial, and, therefore, his case was "disposed of" prior to trial.

Before reviewing the merits of this claim, we must address the state's challenge to its reviewability. Although the defendant did not except to the jury instruction given, he did, as the state acknowledges, file a request to charge. An appellate court can review a challenge to a jury instruction if "the matter is covered by a written request to charge *or* exception

has been taken by the party appealing immediately after the charge is delivered." (Emphasis added.) Practice Book § 852; see also *State* v. *Shindell,* supra, 142; *State* v. *Bowden,* 15 Conn. App. 539, 549, 545 A.2d 591, cert. denied, 209 Conn. 810, 548 A.2d 438 (1988). This authority is not only recognized by, but is also cited in, the state's brief. This claim, therefore, has been properly preserved for appeal.

Next, we address the state's claim that the defendant was not entitled to this charge because the state had no leverage over Sarno, and, for that reason, the jury charge did not apply to this witness. At trial, Sarno testified that the charges against him for the burglary in question were nolled and his sentence was modified as part of a plea agreement that required him to testify against the defendant.[4]

The entry of a nolle prosequi is not a bar to a subsequent prosecution. *Hing Wan Wong* v. *Liquor Control Commission,* 160 Conn. 1, 5, 273 A.2d 709 (1970), cert. denied, 401 U.S. 938, 91 S. Ct. 931, 28 L. Ed. 2d 218 (1971). While the entry of a nolle does terminate a particular prosecution, it does so without an acquittal and without jeopardy ever attaching. The defendant, therefore, "remains vulnerable to reinstatement of a prosecution against him." *State* v. *Herring,* 209 Conn. 52, 57, 547 A.2d 6 (1988); see also *State* v. *Gaston,* 198 Conn. 435, 440–41, 503 A.2d 594 (1986); *Hing Wan Wong* v. *Liquor Control Commission,* supra. Because

---

[4] On cross-examination, defense counsel asked Sarno: "You pled guilty to burglaries but you got a break from the state on this one, because they nolled this one, correct? In other words, they didn't prosecute it, it was thrown out? . . . The state threw this out as part of your plea bargain arrangement. Isn't that correct?" The witness responded affirmatively. Sarno further testified that this plea agreement included a modification of his sentence. He stated on the record, "I'm here testifying because when my modification came up that got me out of prison in Connecticut, the judge told me that one of the reasons he was going to let me out was to come back here and testify against [the defendant] . . . . I took it as an order."

the state could use the potential reinstitution of the prosecution as leverage over the witness, the state's claim that the witness had no interest in the outcome of this case against the defendant is unpersuasive.

Having resolved these preliminary matters, we now reach the merits of the claim that the trial court's instructions were erroneous. In reviewing a challenge to jury instructions, "[t]he charge is to be read as a whole and individual instructions are not to be judged in 'artificial isolation' from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted.) *State* v. *Estep,* 186 Conn. 648, 652, 443 A.2d 483 (1982); see also *State* v. *Stepney,* 191 Conn. 233, 247, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

When an accomplice-witness is involved, the inherent unreliability of that accomplice's testimony ordinarily requires a caution to the jury. *State* v. *Estep,* supra; *State* v. *Colton,* 174 Conn. 135, 141, 384 A.2d 343 (1977). " ' "[W]here it is warranted by the evidence, it is the *court's duty* to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if he assisted or aided or abetted in the commission, of the offense with which the defendant is charged." (Emphasis in original.) *State* v. *Ferrara,* 176 Conn. 508, 512, 408 A.2d 265 (1976); *State* v. *Colton,* [supra].' " *State* v. *Edwards,* 201 Conn. 125, 156, 513 A.2d 669 (1986); *State* v. *Shindell,* supra, 142; *State* v. *Smith,* 16 Conn. App. 223, 227, 547 A.2d 102 (1988). Refusal to charge in the exact words of the request, however, is not error if the substance is given. *State* v. *Edwards,* supra; *State* v. *Shindell,* supra, 143; *State* v. *Estep,* supra, 653.

In this case, the trial court instructed the jury that Carmine Sarno was a self-confessed accomplice. While it did not specifically instruct on accomplice credibility, the court did charge the jury generally on assessing the credibility of witnesses and considering any biases those witnesses might have.[5] The court further informed the jury that Sarno had felony convictions against him and that it could use those felony convictions as a basis for discrediting Sarno's testimony.[6]

Based upon the charge as a whole, it is reasonable to conclude that the jury knew that Sarno was a self-confessed accomplice, that he had felony convictions against him, and that it could use that information, as well as any other observations it had made, in assessing his credibility. Our review of the instruction leads us to conclude that the trial court substantially complied with the defendant's request, albeit not in the exact words of that request.

There is no error.

In this opinion the other judges concurred.

---

[5] Specifically, the court instructed the jury: "In weighing the testimony of a witness, you should consider his or her appearance upon the stand. You should try to size up the witness. You should have in mind those circumstances which point to his or her truthfulness. You should consider any possible bias or prejudice that that person may have, whether for or against the accused. You should consider his interest or lack of interest of whatever sort in the outcome of the trial . . . ."

[6] The court instructed the jury as to Carmine Sarno: "One witness who described himself as an accomplice in the crime . . . testified and admitted, as I recall, to being convicted of two burglaries in this state. I instruct you that where there is testimony by a witness that has had prior felony convictions or one or more felony convictions, burglary is a felony, that fact may be weighed by you in testing the credibility of that witness."