STATE OF CONNECTICUT *v.* JAMES J. SIANO
(13881)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued June 5—decision released August 14, 1990

*John S. Pinney,* with whom was *Thomas E. Gaffey,* for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Warren Grower* and *Paul Gaetano,* assistant state's attorneys, for the appellee (state).

CALLAHAN, J. The defendant, James J. Siano, was charged in an information with the crimes of burglary in the second degree in violation of General Statutes § 53a-102[1] and larceny in the second degree in violation of General Statutes § 53a-123.[2] The charges arose

---

[1] "[General Statutes] Sec. 53a-102. BURGLARY IN THE SECOND DEGREE; CLASS C FELONY. (a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein.

"(b) Burglary in the second degree is a class C felony."

[2] "[General Statutes (Rev. to 1985)] Sec. 53a-102. LARCENY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which is two thousand dollars or less, (2) the value of the property or service exceeds five thousand dollars, (3) the property, regardless of its nature or value, is taken from the person of another, or (4) the property is obtained by defrauding a public community, and the value of such property is two thousand dollars or less.

"(b) In any prosecution under subdivision (1) of subsection (a) of this section, evidence of (1) forcible entry, (2) forcible removal of ignition or (3)

out of a burglary that occurred in the evening hours of May 25, 1986, at a residence located at 2 Lois Lane in Enfield while the family was away. Items exceeding a value of $5000, including a computer and articles of jewelry were taken. The defendant was convicted of the crimes charged in the information and was subsequently sentenced by the trial court to concurrent terms of seven years imprisonment on each count, the terms to be served consecutively to sentences imposed by other states.

The defendant appealed the trial court's judgment to the Appellate Court which upheld the defendant's conviction. *State* v. *Siano,* 20 Conn. App. 369, 567 A.2d 1231 (1989). We granted certification limited to three questions: "(1) Does the disclosure required by Practice Book § 744[3] depend on the personal knowledge of the prosecuting attorney? (2) Are the requirements of Practice Book § 744 met by having the prosecuting attorney make inquiries of the relevant witness? (3) If there was an error in failing to comply with Practice Book § 744, was it waived or was it harmless?" *State* v. *Siano,* 214 Conn. 801, 569 A.2d 550 (1990).

The Appellate Court determined that the trial court did not err when it held that the prosecutor's inquiry of the relevant state's witness concerning his criminal record, and the affirmation by the prosecutor that the information elicited was all he knew of the witness' criminal record, was sufficient to satisfy Practice Book

---

alteration, mutilation or removal of a vehicle identification number shall be prima facie evidence of a larcenous intent.

"(c) Larceny in the second degree is a class C felony."

[3] "[Practice Book] Sec. 744. ——PRIOR RECORD OF WITNESSES

"After a witness called by the state has testified on direct examination, the prosecuting authority shall disclose any record of felony convictions of the witness known to the prosecuting authority and any record of felony or misdemeanor charges pending against the witness known to the prosecuting authority."

§ 744 and that the prosecutor had no affirmative duty to procure further information concerning the witness' criminal record for the defendant. *State* v. *Siano,* supra, 20 Conn. App. 373. We disagree.

The record reveals that at the defendant's trial the state called Carmine Sarno, a resident of Springfield, Massachusetts, as a witness. On direct examination Sarno testified that he had participated, with the defendant, in the burglary at 2 Lois Lane, Enfield. He then went on to describe how he and the defendant had committed the crime and identified the computer that had been stolen. Sarno also testified on direct examination that he had previously pleaded guilty to the 2 Lois Lane burglary and other burglaries he had committed in Connecticut and had been imprisoned as a result of the convictions arising from those pleas.[4] He stated, however, that he had not served the entire term to which he had been sentenced because he had been released early in return for his cooperation in the prosecution of the defendant. Sarno testified further that he was awaiting sentence on an unspecified number of burglary charges in Massachusetts but that he did not know what sentence he would receive in that state because Massachusetts authorities had made him no promises in that regard.

At the conclusion of the state's direct examination of Sarno, the defendant moved, pursuant to Practice Book § 744, for the production by the state of Sarno's record of felony convictions and pending felony and misdemeanor charges. The state, in response, stated that all of Sarno's felony convictions, of which the state was aware, "were brought out to the jury on direct

---

[4] Later, on cross-examination, Sarno admitted that the charges concerning the 2 Lois Lane burglary were nolled as part of a plea bargain in which he pleaded guilty to other Connecticut burglaries.

examination" and that the jury was "well aware" of Sarno's record. The defendant contended, however, that Sarno's testimony that he had pleaded guilty to burglaries in Connecticut and was awaiting sentence for burglaries committed in Massachusetts was not adequate disclosure. The defendant argued that Sarno's direct testimony was insufficient for disclosure purposes because it was not informative as to the extent of Sarno's record. The defendant stated that he was unable to discern from Sarno's testimony whether Sarno had "two or twenty-two" convictions and pending cases in Massachusetts and Connecticut.

The defendant claimed that he was entitled, for impeachment purposes, to Sarno's complete criminal record from a reliable source and that he was not required to depend on Sarno for that information. The trial court, however, stated that the prosecutor was only required to disclose the record "[t]hat he knows of. If he doesn't bother to find out whether his witness has a criminal record, that's the state's problem . . . but I don't agree with you that the state has to find out the criminal record of a witness. . . . I don't know of any obligation that it has to." The defendant thereafter moved to strike Sarno's testimony claiming that without a copy of Sarno's record he would be prevented from conducting an effective cross-examination and would thereby be deprived of his right to confront the witness. See *State* v. *Bowden,* 29 Conn. Sup. 86, 89, 272 A.2d 141 (1970). The trial court denied the defendant's motion to strike.

The state then reopened its direct examination of Sarno and elicited from him the further information that he had no record of felony convictions and no pending misdemeanor charges in Massachusetts but that he did have "eighty or ninety" felony burglary charges pending against him there. The prosecutor provided

the defendant with no further information concerning Sarno's criminal history. The question to be resolved, therefore, is whether the prosecutor's inquiry of Sarno, the state's witness, concerning his criminal record, and the prosecutor's representation to the court that the information elicited was "all he knew" of the defendant's record, were sufficient to satisfy Practice Book § 744.

The rules of statutory construction are equally applicable to Practice Book rules. *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985); *Grievance Committee* v. *Trantolo,* 192 Conn. 15, 22, 470 A.2d 228 (1984); *State* v. *Cook,* 183 Conn. 520, 521–22, 441 A.2d 41 (1981). It is an accepted rule of statutory construction that the promulgators of statutes or rules do not intend to proclaim meaningless or ineffective rules or legislation. See *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984); *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981); 2A J. Sutherland, Statutory Construction (4th Ed.) § 45.12. It is also a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results. *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 593, 522 A.2d 771 (1987); *Sutton* v. *Lopes,* 201 Conn. 115, 121, 513 A.2d 139, cert. denied sub nom. *McCarthy* v. *Lopes,* 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986); *State* v. *Campbell,* 180 Conn. 557, 563, 429 A.2d 960 (1980); 2A J. Sutherland, supra. If we were to adopt the position of the state and the trial court in this case, we would countenance a severe fracture of both of these rules of construction.

The trial court held, in effect, that Practice Book § 744 requires only that the state disclose to the defendant information about the criminal record of a state's witness that is personally known to the individual pros-

ecutor trying the particular case in which that witness appears and testifies. If indeed that is all that § 744 requires, prosecutors would be encouraged to eschew gaining any knowledge of the criminal records of witnesses appearing for the state. In that way, the state could avoid ever furnishing the defendant with material to be used for impeachment purposes. By simply doing nothing and maintaining a posture of studied ignorance the state could thwart § 744 and render it ineffective to fulfill its manifest purpose of providing impeachment material to the defendant for cross-examination. See *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 489, 400 A.2d 726 (1978). We cannot tolerate even the possibility of the occurrence of such a scenario. Section 744 was obviously intended to be effective and to serve a salutary purpose. The rule, however, cannot accomplish its purpose unless the state makes a reasonable, positive effort to secure the information that § 744 requires it to disclose.

Further, if the state has no responsibility under § 744 to take affirmative steps to gain knowledge of the criminal records of its witnesses, a defendant in many instances would be placed in the anomalous position, as was the defendant here, of having to depend on the witness whom he seeks to impeach for reliable information to accomplish that impeachment. We doubt that the authors of § 744 envisioned that such a bizarre situation would exist subsequent to the adoption of the rule. To force the defendant to rely on the very witness he is endeavoring to impeach for an accurate account of his criminal record is illogical and would be antithetic to what the rule was intended to accomplish. We conclude, therefore, that the requirements of § 744 are not met by having the prosecutor make inquiries of the state's witness concerning his criminal record. There is, rather, an obligation on the part of the state

under § 744 to make a reasonable affirmative effort to obtain a record of a state's witness' felony convictions and pending misdemeanor and felony charges for disclosure to the defendant. That conclusion requires that a prosecutor is at least obligated to make known to a defendant, at the proper time, information concerning the criminal record of a state's witness that is known to the prosecutor or is contained in the prosecutor's own case file, information that can be gained through reasonable inquiry of other prosecutorial personnel in the prosecutor's office,[5] and information that is reasonably available to the prosecutor through his access to state and federal computerized criminal information systems. Anything less, we believe, would compromise the effectiveness of § 744 and in many instances would render it a nullity.

There is no indication that at the time of trial the prosecutor had any personal knowledge of Sarno's criminal history other than that which he had gained through Sarno's own testimony.[6] Further, there is no indication that the prosecutor had made any effort to

---

[5] We need not decide in this case what information a prosecutor must have in his possession that would reasonably require this inquiry. Obviously, a prosecutor does not have to make inquiry of other personnel in his office concerning a possible criminal record for every state's witness.

[6] In the Appellate Court, the defendant, in an attempt to show that the state had access to more information than it disclosed, asked the Appellate Court to take judicial notice of the transcript of the proceeding wherein Sarno's Connecticut sentence of confinement was modified to "time served." In that proceeding a prosecutor, affiliated with the same state's attorney's office as the prosecutor who tried Siano, stated: "I think that it should be borne in mind that [Siano] has a great number of cases to face in the Commonwealth that [haven't] been disposed of, and I think there are other cases in Vermont and perhaps New Hampshire." We need not address the question of whether the Appellate Court properly refused to take judicial notice of the transcript because that question was not certified. *State* v. *Torrence*, 196 Conn. 430, 433, 493 A.2d 865 (1985). Further, even if there had been cases pending against the defendant other than the "eighty" or "ninety" burglaries pending in Massachusetts, it would not affect the outcome of this appeal.

secure a more detailed account of Sarno's record for disclosure purposes. Consequently, all that was disclosed to the defendant was what Sarno himself testified to; no computer printout, other documentation, or particularized information in any form was made available to the defendant and no explanation was offered for the failure of the state to acquire such information. Under the circumstances, the state failed to comply with § 744.

The final question to be resolved is whether the failure of the state to comply with § 744 was harmless.[7] The defendant claims the state's failure to comply with § 744 deprived him of his constitutional rights to due process and to confront the witnesses against him. We disagree. The record discloses that despite the state's lack of compliance with § 744, the defendant had information that Sarno had some "eighty" or "ninety" felony burglary charges pending against him in Massachusetts, and that he had been convicted of burglary charges in Connecticut and had been accorded favored treatment here in return for his testimony against the defendant.

The defendant used that information effectively during cross-examination to demonstrate to the jury Sarno's lack of character and credibility and his reasons for testifying against the defendant. Any other evidence of Sarno's record, under the circumstance of this case, would have been gilding the lily as far as dis-

---

[7] The state also originally argued that the defendant waived his claim for disclosure of Sarno's criminal record because he had failed to file a pretrial motion for its discovery under Practice Book § 741. The Appellate Court correctly concluded that this argument was without merit and the state so conceded in oral argument in that court. See *State* v. *Siano*, 20 Conn. App. 369, 372 n.2, 567 A.2d 1231 (1989). The state has not briefed or otherwise pursued the waiver claim on this certified appeal. Where a party fails to brief an issue, it is deemed abandoned. *DeMilo* v. *West Haven*, 189 Conn. 671, 681–82 n.8, 458 A.2d 362 (1983).

crediting him where the jury was concerned. We conclude, therefore, that the state's failure fully to comply with § 744 was insufficient to undermine confidence in the fairness of the trial and, consequently, was not a violation of the defendant's right to due process. *State* v. *Quintana,* 209 Conn. 34, 37–40, 547 A.2d 534 (1988). Further, the defendant had sufficient information to conduct and did, in fact, conduct an effective cross-examination of Sarno. He, therefore, was not deprived of his right of confrontation. *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985). Because there was no constitutional violation, it was the defendant's burden to demonstrate the harmfulness of the § 744 violation. *State* v. *Gonzalez,* 197 Conn. 677, 681, 500 A.2d 1330 (1985). "On the present record we are not persuaded that the defendant has made the requisite showing of the harmfulness of this Practice Book violation." *State* v. *Quintana,* supra, 40.[8]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[8] This court is authorized to rely upon alternative grounds supported by the record to sustain a judgment. *Pepe* v. *New Britain,* 203 Conn. 281, 292, 524 A.2d 629 (1987); *Henderson* v. *Department of Motor Vehicles,* 202 Conn. 453, 461, 521 A.2d 1040 (1987).