JAMES SIANO *v.* WARDEN, STATE PRISON
(11255)

DUPONT, C. J., LANDAU and HEIMAN, Js.

Argued February 22—decision released April 27, 1993

*James M. Ralls,* assistant state's attorney, with whom, on the brief, was *Christopher L. Morano,* assistant state's attorney, for the appellant (respondent).

*James Moreno,* special public defender, for the appellee (petitioner).

HEIMAN, J. The respondent warden of the Connecticut state prison appeals from the judgment of the habeas court granting the habeas corpus petition, vacating the conviction and ordering a new trial. The habeas court found that the failure of trial counsel to present the testimony of the physician who treated the petitioner for injuries received prior to the date of the crime denied the petitioner the effective assistance of counsel. After receiving certification from the habeas court, the respondent appeals, claiming that the habeas court incorrectly found that the petitioner had been denied the effective assistance of counsel during his jury trial. The respondent asserts that the petitioner's trial counsel tactically chose to forego summoning the treating physician to testify because of the fear that he would testify that the petitioner was physically capable of committing the crime charged. The state posits that the petitioner's trial counsel instead relied strategically on the testimony of the petitioner's mother and sister and on cross-examination of the prosecution's key witness to bolster the petitioner's defense. We affirm the judgment of the habeas court.

We first address our scope of review. In a habeas corpus appeal, this court may not disturb underlying historical facts found by the habeas court unless they are clearly erroneous. *Veal* v. *Warden,* 28 Conn. App. 425, 428, 611 A.2d 911, cert. denied, 224 Conn. 902, 615 A.2d 1046 (1992); *Biggs* v. *Warden,* 26 Conn. App. 52, 56, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991). "[W]e are called upon to determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Biggs* v. *Warden,* supra. Our function is not to examine the record to see if the trier of fact could have reached a contrary conclusion. Id. "When

determining whether those facts constitute a violation of the petitioner's right to effective assistance of counsel, however, this court is not bound by such a limited standard of review, because such a determination is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case." *Veal* v. *Warden,* supra; *Phillips* v. *Warden,* 220 Conn. 112, 131, 595 A.2d 1356 (1991). The question of whether the historical facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is subject to plenary review by this court unfettered by the clearly erroneous standard. *Phillips* v. *Warden,* supra; *Daniels* v. *Warden,* 28 Conn. App. 64, 68, 609 A.2d 1052, cert. denied, 223 Conn. 924, 614 A.2d 820 (1992).

The right to the effective assistance of counsel is firmly grounded in the mandates of the sixth amendment to the United States constitution,[1] the fourteenth amendment to the United States constitution,[2] and article first, § 8, of the Connecticut constitution.[3] "The right to counsel is the right to the effective assistance

[1] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[2] The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[3] Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have the right to be heard by himself and by counsel . . . ."

of counsel. . . . This right is equally applicable whether defense counsel is court-appointed [as in the present case], or . . . privately-retained counsel." (Citations omitted.) *State* v. *Mason,* 186 Conn. 574, 577, 442 A.2d 1335 (1982). The right to counsel, however, is the right to effective assistance and not the right to perfect representation. *Commissioner of Correction* v. *Rodriquez,* 222 Conn. 469, 478, 610 A.2d 631 (1992); *Williams* v. *Bronson,* 21 Conn. App. 260, 263, 573 A.2d 330 (1990).

To prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice.[4] *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 455, 610 A.2d 598 (1992); *Summerville* v. *Warden,* 29 Conn. App. 162, 171, 614 A.2d 842, cert. granted on other grounds, 224 Conn. 918, 617 A.2d 172 (1992). To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made " 'errors so serious that [he] was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment.' " *Bunkley* v. *Commissioner of Correction,* supra, quoting *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. *Strickland* v. *Washington,* supra, 687–88; *Daniels* v. *Warden,* supra, 69. We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Daniels* v. *Warden,* supra, 69–70.

[4] Our Supreme Court adopted the two-pronged analysis of *Strickland* v. *Washington,* 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to determine if a counsel's assistance was ineffective. *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 455, 610 A.2d 598 (1992); *Sekou* v. *Warden,* 216 Conn. 678, 690, 583 A.2d 1277 (1990).

To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that " 'counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.' " *Bunkley* v. *Commissioner of Correction,* supra, quoting *Strickland* v. *Washington,* supra, 687. The petitioner must establish that, as a result of his trial counsel's deficient performance, "there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal." *Bunkley* v. *Commissioner of Correction,* supra, 454. The second prong is thus satisfied if the petitioner can demonstrate that "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Summerville* v. *Warden,* supra.

The facts underlying the petitioner's arrest and trial as were reasonably found by the habeas court may be briefly summarized as follows. The petitioner was arrested by the Enfield police who charged him and another individual with a residential burglary and larceny in the town of Enfield on or about May 25, 1986. The residence was entered through a kitchen window located in the rear of the house. The backyard of the house was surrounded by a wooden stockade fence.

The principal state's witness was the coconspirator, Carmine Sarno. Sarno testified that the petitioner had been to the house the day before the burglary to check it out. He said that he entered the house through a kitchen window at the back of the house and then opened a sliding glass door and admitted the petitioner. The petitioner went upstairs, according to Sarno, and discovered computer equipment, which they took from the house. Sarno testified that he carried the equipment from the house but that the petitioner carried it into Sarno's house in Springfield, Massachusetts, without

assistance. The computer consisted of four pieces including a dot matrix printer, a keyboard, a monitor and the central processing unit. The computer parts were exhibits at the petitioner's criminal trial, and the trial court noted that the computer equipment was "heavy equipment."

On cross-examination, it was shown that Sarno had previous burglary convictions including a burglary in Connecticut for which he had received a sentence of five years suspended after two years. In addition, he was awaiting sentencing in Massachusetts on other burglary charges where he was exposed to a maximum sentence of eighty to ninety years. It was further shown that, as consideration for his testimony against the petitioner, the charges against him arising out of the same transaction were to be nolled and the Connecticut sentence that he was serving was to be advantageously modified.

On April 28, 1986, approximately four weeks prior to the burglary, the petitioner had been injured in a motor vehicle accident. He had sustained a displaced fracture of the left distal radius, a fractured right metatarsal head and multiple abrasions about the body. The petitioner was hospitalized from April 28 until May 1, 1986. The fracture of the left wrist was treated by inserting a pin and applying a plaster cast to the hand, thereby immobilizing the hand and limiting its use. In addition, the fracture of the bone in the foot necessitated the use of a crutch at discharge, limiting his mobility for at least six weeks after injury.

The defense called only two witnesses. The petitioner's mother testified that her son was completely disabled upon discharge from the hospital on May 1, 1986, that he required the use of crutches to walk and that this reliance on crutches continued for more than six weeks after the injury. His sister testified that the

petitioner had a broken arm and foot and massive scrapes over his body. No medical witness was called to testify as to the injuries suffered by the petitioner and the probable effect on his ability to engage in the kind of activities that had been described by the state's principal witness.

The petitioner had supplied to his attorney, a special public defender,[5] the name of his orthopedic surgeon, Victor Panitch of Holyoke, Massachusetts, as well as the name of the hospital where he had been confined for the three days following the injury. The attorney obtained a copy of the hospital discharge summary and a letter from Panitch.[6]

---

[5] We note that while the respondent's brief states that at the time of the petitioner's criminal prosecution the special public defender had "handled over a thousand criminal cases," an examination of the transcript of the testimony in the habeas proceeding indicates that the petitioner's criminal trial represented counsel's first criminal jury trial.

[6] The discharge summary was an exhibit at the habeas trial and provides:

"PATIENT NAME:          SIANO, JAMES
ROOM:                  HOSPITAL: 43-16-30
ATTENDING PHYSICIAN:   V. PANITCH, M.D.
TYPE OF REPORT:        DIS. SUM.

          --------------------

ADMITTED:              4/28/66 [sic]
DISCHARGED:            5/1/86

Mr. Siano was admitted to the hospital after falling from a dirt bike sustaining severe abrasions over multiple areas of his body, displaced fracture of the left distal radius and a fractured right metatarsal head.

COURSE IN THE HOSPITAL: The patient shortly after admission was taken to the operating room where his wounds were scrubbed, his fracture reduced and held with pins and plaster. The patient's postoperative course was marked by a great deal of pain but otherwise was uncomplicated. At the time of discharge the patient was managing well with one crutch. Neurologic function and range of motion of the left hand was good. The patient will be followed as an out patient.

DISCHARGE DIAGNOSIS: DISPLACED FRACTURE LEFT DISTAL RADIUS.
FRACTURED RIGHT METATARSAL HEAD.
MULTIPLE ABRASIONS.
SIGNED _____ M.D.
V. PANITCH, M.D. . . ."

The petitioner's trial counsel, in his opening remarks to the jury panel, announced that the petitioner would call Panitch to testify in his behalf. The theory of defense was that the petitioner did not commit the crimes with which he stood charged and that his physical condition at the time of the crimes made it highly unlikely that he could have been involved in the commission of the burglary as described by the state's principal witness.

Despite his representation that the petitioner would call Panitch as a witness, no steps were taken to issue a subpoena to compel the surgeon's attendance to testify,[7] nor did he properly subpoena the hospital record.[8] Consequently, the hospital record was never offered into evidence.

---

The text of the Panitch letter is as follows:

"August 18, 1986

"Dear Sirs:

"Re: James Siano

"This is to confirm that James Siano sustained a severe fracture of the left wrist and was immobilized with that hand in a cast making its use quite limited.

"In addition, the patient sustained a fracture of one of the bones in his foot making it quite difficult for him to be very agile on his feet for a good six weeks from the time of his injury.

"Prolonged standing or running would be very difficult.

"Yours truly,
 s/Victor Panitch
 Victor Panitch, M.D."

[7] See General Statutes § 54-82i (c).

[8] The special public defender testified that he intended "to present Mr. Siano's medical records under the provisions of the Practice Book which would allow medical records to be presented in a way where they're self-authenticating if they are accompanied with the correct documents from the institution. [He] made a request to Providence Hospital to send them to court in the correct form and, in fact, drafted a form letter for them to sign off on. They apparently discarded that or otherwise ignored that, stuffed them in an envelope and sent them to the clerk. So that when they arrived they were not in the correct form to have them introduced as self-authenticating documents. . . . [His] judgment at that point in time was

At the completion of the state's case-in-chief, the petitioner offered the testimony of his mother and his sister in support of his claims of disability arising out of the injuries he suffered. At the completion of the testimony by the petitioner's sister, counsel advised the trial court that his investigator had contacted Panitch's office to determine the surgeon's availability. Counsel reported that he had been advised that Panitch was in his last surgery. The special public defender requested a brief recess "so we can get to the doctor's office and find out if he is able to get here today or not." The court took a recess at 2:35 p.m. as requested and court reconvened at 3:27 p.m. In response to the trial court's inquiry as to whether there were any preliminaries before the jury was brought in, the petitioner's attorney said no. The jury was brought back into the courtroom and the following colloquy occurred:

"[The Court]: All right, [counsel], do you have any further evidence to present?

"[Special Public Defender]: No, Your Honor. Although we did tell the jury in the beginning we were going to call Dr. Panitch, he is in emergency surgery and will not be able to testify. And therefore the defense now rests."

The trial court then continued the case until the following morning so that arguments and the trial court's charge to the jury could take place as a unit. The case was committed to the jury at 2:51 p.m. following the court's charge and the jury returned at 4:06 p.m. with verdicts of guilty as charged as to both counts. The petitioner was convicted of burglary in the second degree

that in the form they were in they were inadmissible." Our examination of the rules of practice fails to disclose exactly what rule the special public defender was referring to in his testimony. See General Statutes §§ 52-180, 52-180a, and 4-104.

in violation of General Statutes § 53a-102, and larceny in the second degree in violation of General Statutes § 53a-123 (a) (2).[9]

At the habeas proceeding, the court heard the testimony of Panitch and the petitioner, and of attorney Thomas R. Gerarde, who was experienced as a special public defender and who was the petitioner's expert witness. Panitch testified that it would have been very difficult for the petitioner to have carried the computer equipment because of his extensive injuries. He also testified that he had never spoken directly with counsel about the testimony he would offer as to the extent and effect of the injuries. During the course of Panitch's testimony, the court had the opportunity to observe his demeanor, appearance, and ability to relate and communicate facts, and found that he made an excellent witness.

The habeas court noted that during the trial the petitioner's counsel had told the jury in his opening argument that he would call Panitch. Counsel later decided not to call the surgeon to testify because he was in emergency surgery. At that point, the defense rested its case. While the petitioner's counsel stated that he concluded that that the surgeon would be a reluctant witness and that he perceived differences between the surgeon's letter and the discharge summary, the habeas court could not find any reasonable basis for the attorney's conclusions. The special public defender had

---

[9] On December 22, 1987, the trial court sentenced the petitioner to seven years in the custody of the commissioner of correction on each count, the sentences, however, to be served concurrently with each other, but consecutively to a sentence of eighteen to twenty years then being served by the petitioner in Massachusetts. The petitioner appealed to this court, and we affirmed the judgment of the trial court. *State* v. *Siano*, 20 Conn. App. 369, 567 A.2d 1231 (1989). On petition for certification, the petitioner was permitted to appeal from this court to our Supreme Court, and our judgment was affirmed by that court. *State* v. *Siano*, 216 Conn. 273, 579 A.2d 79 (1990).

stated that he believed a subpoena was not necessary because the surgeon was a friendly witness, but later termed him to be reluctant.[10] He also failed to discuss with Panitch any of the differences between the discharge summary and the letter.

Gerarde testified that the petitioner's attorney's conduct at trial fell below an objective standard of reasonableness. In his opinion, a reasonable attorney would have called the surgeon to testify to support the petitioner's defense that it would have been extremely difficult and unlikely that the petitioner committed the crimes charged. He testified that, without the surgeon's testimony, the petitioner was essentially left with no defense to the crimes charged. He also noted that counsel's conduct fell below the standard of care because he failed to subpoena the surgeon and risked his not testifying. In his expert opinion, had petitioner's counsel not deviated from the objective standard of care and had the surgeon testify, it was reasonably probable that the outcome of the trial would have been different.

The state has failed to demonstrate that the habeas court's factual findings are clearly erroneous. The habeas court, as the fact finder, determines the credibility and effect to be given to the testimony before it. See State v. Rivera, 30 Conn. App. 224, 231, 619 A.2d 1146 (1993). A review of the entire record reveals that the habeas court's factual findings are not clearly erroneous.

On the basis of these findings, the habeas court could have reasonably concluded that the petitioner was denied his constitutional right to effective assistance of counsel.[11] After examining the testimony as to the

---

[10] One of the reasons alleged for the surgeon's reluctance to testify was an unpaid medical bill.

[11] The habeas court noted that without Panitch's testimony, the jury was left wondering about the true extent of the petitioner's injuries.

extent of the petitioner's injuries, the habeas court could have logically concluded that the testimony would have provided the petitioner's claims with credibility, casting significant doubts on the state's case. In light of this, we agree with the habeas court's finding, supported by the evidence, that counsel's failure to call the surgeon was not a strategic or tactical decision. His alleged strategy left the petitioner without a key witness and a viable defense. See *Summerville* v. *Warden,* supra, 171–72, and cases cited therein. The petitioner's trial counsel's performance was thus deficient.

The habeas court could have logically and reasonably concluded that the petitioner was prejudiced by the deficient performance of his trial counsel. Had the surgeon testified, there was a reasonable possibility that the result of the proceeding would have been different. The petitioner's counsel's errors in his representation of the petitioner at trial were so serious as to deprive the petitioner of a fair trial, a trial the result of which is reliable. The petitioner was left without a neutral credible witness who could refute the state's allegations against him. The petitioner's trial counsel's assistance was ineffective, depriving him of his constitutional right.

The judgment is affirmed.

In this opinion the other judges concurred.