## STATE OF CONNECTICUT *v.* SUSAN NELSON
### (8297)

O'CONNELL, LAVERY and CRETELLA, Js.

Argued June 18—decision released September 11, 1990

*Gary Case,* certified legal intern, with whom were *Timothy H. Everett* and *Pamela A. Mitchell,* certified legal intern, and, on the brief, *Michael R. Sheldon,* for the appellant (defendant).

*James A. Killen,* assistant state's attorney, with whom, on the brief, were *Mary Galvin,* state's attorney, and *Paul Gaetano,* deputy assistant state's attorney, for the appellee (state).

O'CONNELL, J. This appeal arises after the defendant's conditional plea of nolo contendere to a charge of manslaughter in the second degree with a motor

vehicle in violation of General Statutes § 53a-56b. She argues that this manslaughter prosecution (1) violated an earlier plea agreement involving a lesser charge arising out the same incident, and (2) violated the constitutional prohibition against double jeopardy. We reverse.

The following facts are relevant to this appeal. On February 20, 1988, the defendant was driving southbound on Surf Avenue in Milford when she lost control of her vehicle. Her car crossed the northbound lane, mounted the curb and struck a thirteen year old victim, who had been unable to escape the path of the oncoming car. The victim suffered severe head and internal injuries. The defendant failed a field sobriety test and two subsequent breath tests, which showed a blood alcohol level of .163 and .141. She was subsequently charged, inter alia, with assault in the second degree with a motor vehicle in violation of General Statutes § 53a-60d.

On April 26, 1988, defense counsel, the state's attorney and Bernard F. Joy, the attorney who represented the victim and his family, met in a pretrial conference with the trial judge in his chambers to discuss a plea agreement. At that conference, Joy informed all present that the victim was still hospitalized in grave condition and that he might not live. At the conclusion of the conference, the trial judge indicated that he would accept the plea. The defendant then pleaded guilty to the assault charge pursuant to the agreement.

The defendant's sentencing took place on June 10, 1988. At the hearing, the victim's mother described the condition of her hospitalized son. She informed the court, *Gill, J.,* that the victim's condition was still extremely serious and that he faced a long and difficult recovery period. The court then sentenced the defendant to the agreed upon term of five years in the custody of the commissioner of correction, suspended

after three years, and five years probation. At the conclusion of its sentencing remarks, the court granted the state's request that property seized from the defendant be destroyed. General Statutes § 54-36a.

The victim died from his injuries on October 26, 1988, never having left the hospital. On February 21, 1989, a warrant was issued for the defendant's arrest on the charge of manslaughter in the second degree with a motor vehicle. The defendant moved to dismiss the information on the grounds that the new prosecution was barred by principles of double jeopardy and that the state had waived any rights to bring additional charges when it agreed to the April, 1988 plea bargain.

At the hearing on the defendant's motion, the court, *Reilly, J.,* found that, prior to the defendant's guilty plea, Joy had informed all concerned of the victim's precarious condition. The court also found, however, that other information, including hospital records, indicated that the victim had been recovering. The court concluded that it would not hold the state to predicting the victim's death, and it denied the motion to dismiss.

The court then indicated that it would allow the defendant to withdraw her earlier guilty plea, and the defendant did so on June 22, 1989. This was followed by the defendant's plea of nolo contendere to the manslaughter charge, conditioned on her right to appeal the denial of her motion to dismiss. General Statutes § 54-94a; Practice Book § 4003. She was sentenced to a term of ten years imprisonment, suspended after four years, and five years probation, with credit for time served on the earlier conviction. This appeal followed.

In her first claim, the defendant argues that the agreement under which she pleaded guilty to assault barred her reprosecution on a manslaughter charge

because, in bargaining for the plea, the state induced in her a reasonable belief that no further charges would be brought if the victim were to die. She argues that the second prosecution thus violated her due process guarantees. The state counters that it abided by the terms of the agreement and that no mention was made of the chance of further prosecution. Any misunderstanding by the defendant, the state asserts, cannot be attributed to anything the state did or did not say or do.

Plea agreements are an essential and necessary part of the administration of justice; *Santobello* v. *New York,* 404 U.S. 257, 260–61, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); and, without this vital process, the overburdened wheels of justice would nearly grind to a stop. "Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned." Id., 261. This essential tool of the criminal justice system will lose its efficacy if the state's performance of the agreement is contrary to the reasonable expectations of the defendant. *State* v. *Lopez,* 197 Conn. 337, 341, 497 A.2d 390 (1985); *State* v. *Thomas,* 61 N.J. 314, 321, 294 A.2d 57 (1972). "Because a defendant waives several constitutional rights when [she] elects to plead guilty to a criminal offense, the choice of a guilty plea is of profound significance." *State* v. *Lopez,* supra.

If the state makes promises to the defendant in order to induce a guilty plea, those promises must be fulfilled; *Santobello* v. *New York,* supra, 262; and " '[t]he breaking of a promise made by the prosecutor as a result of plea negotiations is sufficient to invalidate a conviction.' " *Szarwak* v. *Warden,* 167 Conn. 10, 19, 355 A.2d 49 (1974); see also *Paradiso* v. *United States,* 689 F.2d 28, 30 (2d Cir. 1982), cert. denied, 459 U.S. 1116, 103 S. Ct. 752, 74 L. Ed. 2d 970 (1983).

Where, as here, there is a dispute as to the terms of a plea agreement, our analysis turns on "the real intent of the parties, and most significantly, of [the defendant] . . . . " *Paradiso* v. *United States,* supra, 31. The defendant argues that she reasonably believed that the plea agreement terminated all her criminal liability flowing from the accident. Despite the state's silence as to what would happen if the victim died, its conduct strongly implied that it shared the defendant's interpretation of the plea agreement.

The trial court found that the parties were aware of the victim's precarious condition. While it is true that at the sentencing hearing the victim's mother spoke of his eventual recovery, the state and the defendant had to be aware that this was by no means a certainty. Under the circumstances, it was incumbent upon the state to enunciate what was and was not covered by the agreement lest the defendant be allowed to go to plea under the impression that the criminal portion of this tragic episode was closed. If the state was reserving a right to reprosecute in the event of the victim's death, it could have, and should have, said so. It did not even remotely imply that this was its intent.

We take particular note of the fact that, at the conclusion of the June, 1988 sentencing, the state moved to have certain evidence in the case destroyed. At oral argument, the state suggested that this evidence

related to two additional criminal charges that were nolled as part of the plea agreement. We need not accept the state's invitation to go outside the record and confirm this fact. The destruction of any evidence seized at a crime scene is consistent with a belief that no further charges will be brought and lends credence to the defendant's claim that she reasonably believed her plea ended her criminal liability.

Furthermore, we think it significant that the parties agreed to a specific term of imprisonment. We question whether the defendant would have given her assent to a prison term if she thought that additional, more serious charges could be brought later. See *State* v. *Schaeffer,* 5 Conn. App. 378, 390, 498 A.2d 134 (1985) (term of imprisonment is the defendant's "bottom line"). It is a basic principle of law that common sense is not left at the courtroom door. See *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985). It would be illogical to conclude that the defendant would have agreed to a three year term of imprisonment if she believed that it was perhaps only the first installment on a lengthier term to be imposed if Eric died.

The state also contends that even if we find that the plea agreement was breached, the breach was harmless because the defendant was allowed to withdraw her plea on the assault charge. We disagree. It is true that "fairness ordinarily impels the court, in its discretion, either to accord specific performance of the agreement or to permit the opportunity to withdraw the guilty plea." *State* v. *Littlejohn,* 199 Conn. 631, 644, 508 A.2d 1376 (1986). If the plea is withdrawn, however, that means that the defendant will plead anew to the original charges. *Santobello* v. *New York,* supra, 263 n.2. Under the facts of this case, we conclude that it would be unjust to the defendant for us to vacate her plea when she "has already been punished for the crime

to which [she] confessed." *State* v. *Thomas,* supra, 324. Accordingly, we hold that specific performance of the agreement is the only appropriate remedy because it is the only way that the status quo can be restored. Id.

In view of our disposition of the first claim, we do not reach the double jeopardy issue.

The judgment of conviction of manslaughter in the second degree with a motor vehicle is reversed and the case is remanded with direction to reinstate the defendant's conviction of assault in the second degree with a motor vehicle.

In this opinion the other judges concurred.