******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., dissenting. The majority concludes that the disposition agreement between the defendant, Craig Kallberg, and the state, as reflected in the transcript of the September 22, 2011 disposition hearing, was ambiguous as to whether the defendant's charitable contribution of $271 was intended to be in exchange for the nolle prosequi of the charges that the state has reinstituted in the present case. Construing that ambiguity in favor of the defendant, the majority concludes that the state agreed to the nolle in exchange for consideration. Accordingly, it holds that the charges in the present case should have been dismissed. I would conclude that, to the contrary, the transcript of the disposition hearing clearly and unambiguously demonstrates that the defendant agreed to make the charitable contribution in exchange for the nolle of the charges in a separate case and that the nolle of the charges that were reinstituted in the present case was unilateral. I would conclude, therefore, that there was no bar to bringing the charges in the present case.[1] Accordingly, I dissent.

As the majority indicates, in September, 2011, the defendant had four separate cases pending against him with separate docket numbers. For purposes of this dissenting opinion, I refer to the cases as: (1) the driving case (docket number MV-10-0228488); (2) the drug case (docket number CR-10-0046914); (3) the breach of the peace case (docket number CR-10-0047442); and (4) the burglary case (docket number CR-10-0046439-T, the underlying facts of which form the basis of the charges in the present case). With the assistance of Judge Strackbein, the defendant and the state entered into a tentative plea agreement pursuant to which the defendant agreed to plead guilty to possession of drug paraphernalia in the drug case and to pay a fine of $300, in exchange for which the state would enter nolles in the other three cases.[2] When the parties appeared in court to enter the plea on September 22, 2011, however, Judge Strackbein was unavailable. Accordingly, Judge Kahn, who was under the understanding that she was going to be the trial judge in this case, heard the matter. The state has represented to this court, and the defendant does not dispute, that, because Judge Strackbein was unavailable to take the guilty plea, and because Judge Kahn was reluctant to become involved in plea negotiations because she would be trying the case,[3] the parties agreed that entering a guilty plea on the drug charge would not be an option if they were to resolve the matter at that time. Accordingly, they reached a new disposition agreement under which all of the cases would be nolled.

Pursuant to Practice Book § 39-29,[4] the prosecutor

explained the new disposition agreement to Judge Kahn as follows. First, the prosecutor read into the record the docket numbers of the four cases that were to be addressed at the disposition hearing, in the order set forth previously. With respect to the first case, the driving case, which involved charges of driving without insurance and driving unreasonably fast, the prosecutor explained that "[w]hat we do in those cases is make sure that the insurance is gotten, if in fact he's driving an automobile, and the license is still valid or is valid. [The defendant] says that . . . he was operating with a valid motor vehicle license." Accordingly, the prosecutor explained, "[t]he state is entering a nolle on that." Judge Kahn immediately responded, "Nolle is noted."

With respect to the third case, the breach of the peace case, the prosecutor explained that the complainant in that case had been incarcerated and did not want to pursue the matter. Accordingly, he explained "we're entering a nolle in that matter based on the victim's wishes." Judge Kahn again responded immediately, "Nolle noted." The prosecutor then stated that he would address the second case that he had mentioned at the outset, the drug case, at the end of the hearing.

With respect to the burglary case, the prosecutor explained that the state had serious doubts as to "whether [it] could ever prove the breaking and entering or the illegal entry . . . ."[5] In addition, the defendant had given up possession of the items at issue to the police. Accordingly, the prosecutor explained, "[t]he state's entering a nolle in that file." Yet again, Judge Kahn immediately responded, "Nolle noted."

Finally, with respect to the drug case, the prosecutor explained that the matter involved "a simple possession of narcotics," and that another individual had admitted to possessing some of the narcotics at issue. The prosecutor further explained that, as the result of these circumstances, the defendant originally had agreed to plead guilty to possession of drug paraphernalia and to pay a fine of $300, in exchange for which the state would nolle the other three cases. The prosecutor then explained that, because of the concerns over the entry of a guilty plea raised by Judge Strackbein's absence, the defendant had agreed that he would instead contribute $271 to the "victim's fund,"[6] "in light of [which the state agreed] . . . to nolle this case, as well."[7] Judge Kahn responded that she would "note the nolle on that."

In my view, the foregoing makes it inescapably clear that each of the four cases against the defendant was nolled for an entirely distinct reason, and *only* the drug case was nolled in exchange for the $271 charitable contribution. As I have explained, Judge Kahn noted that nolles in the driving case, the breach of the peace case and the burglary case had been entered *before* the prosecutor even mentioned the disposition of the drug case. In addition, Judge Kahn expressly stated at the

September 22, 2011 hearing: "I do know [that the prosecutor's] nature is not to enter nolles lightly and so it's not his practice to nolle cases unless there's a good reason, so I'm going to take him at his word that he couldn't prove the [burglary] case."[8] Moreover, while he was attempting to explain to Judge Kahn why a previous guilty plea offer in the burglary case, of which Judge Strackbein had been aware, was no longer in effect, the prosecutor stated: "Perhaps the drug case changed significantly when [the codefendant] died and [the victim] was unavailable.[9] So I don't have a larceny four . . . ." (Footnote added.) Judge Kahn responded, "I appreciate that you've made a full record of it . . . ." It is clear, therefore, that Judge Kahn understood that lack of proof was the reason for the nolle of the burglary case. Judge Kahn further stated that she understood that the prosecutor "would nolle some matters because he had an inability to get certain witnesses . . . ." In addition, she stated that "if the state wishes to enter a nolle, there's nothing the court can do. The state can enter a nolle. It's within the prosecutorial discretion. All the . . . court can do is ask the state to put their reasons on the record. But they can nolle cases whenever they want, and all the court can do is ask the reasons. I have no issues with [the prosecutor's] reasons . . . . I understand them. You've put them on the record, and so I'm not quarreling with that at all." Finally, Judge Kahn stated that she would "note the nolles *for the reasons stated on the record.*" (Emphasis added.) Thus, Judge Kahn clearly viewed the reasons for entering the four nolles as distinct and independent reasons.

Indeed, if the defendant had agreed to make the $271 charitable contribution in exchange for all four nolles, there would have been absolutely no reason for the prosecutor to state on the record the reasons for the nolles in the driving case, the breach of the peace case and the burglary case. The prosecutor could have simply explained that, in exchange for the contribution, all four cases were being nolled. To the contrary, however, the prosecutor expressly stated that, in light of the charitable contribution, the state had agreed to nolle "*this case*"—the drug case—not all of the cases. (Emphasis added.) Thus, the only reasonable interpretation of the transcript of the disposition hearing is that the parties intended that *only* the drug case would be nolled in exchange for the defendant's charitable contribution of $271, and the other three cases would be nolled for entirely distinct reasons, none of which involved any concessions by or consideration from the defendant.

In addition, there is a plausible explanation for this restructuring of the disposition agreement. Instead of receiving a conviction in the drug case and effective dismissals of the other three cases,[10] the defendant would receive an effective dismissal in the drug case

and unilateral nolles on the other three charges, under which the state would be entitled to reinstitute the charges.[11] The original plea agreement was in accordance with Practice Book § 39-5, which authorizes the state to nolle other charges against the defendant in exchange for a *guilty plea* on a particular charge. Presumably, the parties' agreement that the defendant would plead guilty to possession of drug paraphernalia and pay a criminal fine only in the drug case was premised on their view that that was the state's strongest case, considering both the extent of the defendant's culpability and the strength of the state's evidence. A guilty plea in the drug case, however, was no longer an option. Accordingly, it is reasonable to conclude that, with a view to preserving the original intent to tie the financial consequences to the defendant exclusively to the drug case, and knowing that the guilty plea no longer provided consideration for the nolles in the other three cases, the parties agreed that the defendant would make a charitable contribution in exchange for the nolle in the drug case and the other cases would be nolled for distinct reasons. This new arrangement involved trade-offs for both parties, in that the state gave up the conviction in the drug case but gained the ability to reinstitute charges in the other three cases if circumstances changed, while, conversely, the defendant avoided a certain criminal conviction in the drug case but took on the risk that the state might reinstitute the charges in the other cases. In contrast, if the parties had agreed to preserve the original intent to effectively dismiss the driving case, the breach of the peace case and the burglary case by entering nolles in all four cases in exchange for a charitable contribution, the benefits of the change in disposition would have flowed exclusively to the defendant. Specifically, the defendant would have avoided a criminal conviction in the drug case *and* the state would have been barred from reinstituting the charges in all four cases. Accordingly, because it is clear that it was the intent of the parties that the defendant would pay a charitable contribution in exchange only for the nolle in the drug case, and because there is a more than plausible explanation for the change in the disposition of the other cases, I would conclude that the state was barred only from reinstituting charges in the drug case, and it was free to reinstitute the charges in the present case arising from the conduct that was the basis of the nolled burglary case.

The majority makes numerous arguments in support of its conclusion to the contrary, none of which bears scrutiny. First, the majority points out that "[t]he prosecutor made no remark at the outset of the hearing to indicate that one of the four cases was being treated *differently*, nor did he preface the discussion of the drug case with any such comment." (Emphasis added.) As I have indicated, however, the prosecutor did treat the cases differently because he took the drug case out

of order and addressed it last. Thus, he grouped the three cases that were unilaterally nolled together and treated the drug case separately. Moreover, the failure of the prosecutor to state expressly that only the drug case was being nolled in exchange for consideration does not render the remarks that he *did* make ambiguous. As I have indicated, he unambiguously indicated that each of the four cases had a different reason for being nolled, and that the drug case was the only case that was being nolled in exchange for the defendant's charitable contribution.

The majority also contends that, because all of the cases were treated the *same*, i.e., they were nolled, it is reasonable to conclude that the parties intended that the driving case, the breach of the peace case and the burglary case would be effectively dismissed, like the drug case. Specifically, the majority contends that the reasons given by the prosecutor for the nolle in the drug case were "problems in proof and lack of interest in pressing the matters given the circumstances attendant to the case," reasons that were not markedly different from the reasons given in the other cases. The prosecutor mentioned these issues, however, in an attempt to explain the reasons for the previous plea agreement pursuant to which the defendant would plead guilty to possession of drug paraphernalia and pay a $300 fine. The prosecutor then explained that, in lieu of the fine, the defendant had made a $271 charitable contribution and, "[i]n light of that," the state was entering a nolle in that case. It is clear, therefore, that the *reason* for that nolle, *unlike* the nolles in the other cases, was the payment of the charitable contribution. The majority further contends that Judge Kahn's remarks referring to a prosecutor's broad discretion to enter nolles as long as the prosecutor states the reasons on the record merely "underscores the inherent ambiguity in the record as to the parties' intention" because she drew no distinction between the unilateral nolles and the nolle in the drug case. From the perspective of *Judge Kahn* however, there was no distinction between the unilateral nolles and the nolle in exchange for the charitable contribution, in the sense that she could not reject any particular nolle and demand that the state continue with the prosecution. That does not mean that there was no distinction between a unilateral nolle and a nolle entered in exchange for consideration from the *defendant's* point of view.

To the extent that the majority suggests that the defendant might reasonably have had the mistaken belief that the nolle entered in exchange for consideration and the unilateral nolles would have the *same legal effect*, the defendant has raised no claim of legal mistake, unilateral or otherwise, before the trial court or on appeal. Rather, the defendant contended in his motion to dismiss only that "the state previously entered a nolle prosequi on these charges after the

payment of a charitable contribution by the defendant. The payment of this charitable contribution was made by the defendant in consideration of the state entering a nolle prosequi on the pending charges [in the burglary case], constituting a valid and enforceable plea agreement." The defendant further contended in support of his motion to dismiss, as he does on appeal, that, to the extent that the disposition agreement, as reflected in the transcript of the disposition hearing, is ambiguous on this point, it should be construed in his favor. There is a difference between a contract that is ambiguous and a contract that is clear and unambiguous but, because of a mistake of fact or law, does not accurately reflect the intent of one of the parties, and the defendant has not raised a claim involving the latter issue. Accordingly, this court must presume that the defendant understood the legal distinction between unilateral nolles and nolles entered in exchange for consideration.

Second, the majority contends that the defendant's charitable contribution to the victim's fund "bore no logical connection to the drug case" because, according to the majority, there was no victim in that case.[12] As I have explained, however, the logical connection to the drug case was the preexisting intent of the parties that the financial consequences to the defendant would be tied to that case. Because the defendant could not be required to pay a criminal fine if he did not plead guilty to the charge, a charitable contribution to the victim's fund, which is a common practice when disposing of criminal matters, was a logical substitute, regardless of whether any specific victim of this particular crime could be identified.

Third, the majority contends that the prosecutor made comments that "reasonably would have suggested to the defendant that the prosecutor would not recommence prosecution in the [burglary] case." Specifically, the majority relies on the prosecutor's comment that "nobody here is out anything in the particular file" and his request that any property relating to the case be returned to its rightful owner. The majority ignores the fact, however, that the primary reason that the prosecutor gave to Judge Kahn for entering a nolle in this case was that he had doubts that the state "could ever prove the breaking and entering or the illegal entry," thereby indicating that, if proof became available, all bets would be off. It was only after giving that reason for the nolle that the prosecutor made the offhand comment that "nobody here is out anything" as additional support for the nolle. The prosecutor was entitled to balance problems of proof with the extent of the harm to the victim, and when proof is difficult and the harm small, a nolle may be indicated. That does not mean that, if strong evidence becomes available, a decision not to prosecute would still be the appropriate course. In any event, even if I were to agree that the prosecutor sug-

gested that he did not anticipate any change in circumstances that would support reinstitution of the charges, that would not render the intent of the parties to enter a unilateral nolle ambiguous.

With respect to the prosecutor's request that the property be returned to its rightful owner, the return of stolen property does not constitute the "destruction of . . . evidence" and, therefore, the majority's reliance on *State* v. *Nelson*, 23 Conn. App. 215, 219–20, 579 A.2d 1104, cert. denied, 216 Conn. 826, 582 A.2d 205 (1990), cert. denied, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991), for the proposition that the destruction of evidence evinces a belief that no further charges will be brought is misplaced. See General Statutes § 54-36a (b) (2).[13] The majority contends that, to the contrary, § 54-36a (b) (2) has no bearing on its argument because the prosecutor never indicated on the record "that photographs of the evidence had been taken or that they were being preserved" as secondary evidence. See footnote 10 of the majority opinion. There is no requirement, however, that a prosecutor who has entered a unilateral nolle and requested that stolen property be returned to the owner explain on the record whether or how secondary evidence is being preserved in order to maintain the right to reinstitute the charges. Moreover, even if I were to assume that the defendant reasonably could have believed that the state would no longer possess evidence to support the burglary charge, making it unlikely that it would reinstitute that charge, that would not render the *reason* for the nolle ambiguous, and if the defendant intended that the nolle would be unilateral, we must presume that he knew that the state was not barred from reinstituting the charges. The majority continually confuses the issue of whether the defendant could have misunderstood the *legal effect* of a unilateral nolle—an issue that has not been raised—with the issue of whether the parties intended that the nolle in the burglary case would be unilateral, which they clearly did.

Fourth, the majority makes an elaborate argument regarding the prosecutor's intent to take the "bull by the horns" in light of Judge Strackbein's unavailability and his failure to state on the record how this or any other change in circumstances "would explain a change from the original intent to effectuate a global disposition." As I have explained, however, Judge Strackbein's unavailability meant that the defendant could not plead guilty on the drug charge as consideration for the effective dismissal of the other cases. Because that was no longer an option, it is reasonable to conclude that the parties abandoned their plan to effectively dismiss the charges in those cases as part of a trade-off that involved gains and losses for both parties. In my view, the prosecutor had no obligation to explain on the record why the parties were not entering into a new agreement that would benefit the defendant exclusively. Moreover,

even under the state's view, the new disposition agreement, like the discarded plea agreement, would be "global" in the sense that each of the four cases would be disposed of in some manner. In any event, the prosecutor's failure to expressly discuss the theory underlying the new *overall* disposition on the record does not change the fact that the distinct reasons that he gave for entering a nolle in each of the four individual cases show clearly and unambiguously that *only* the drug case was nolled in exchange for the charitable contribution.

Finally, the majority argues—yet again—that "[i]f the prosecutor intended to enter unilateral nolles on three of the cases and effectuate a nolle agreement confined to only the drug case, then it was incumbent on the prosecutor to make that explicit on the record to avoid any ambiguity." It is clear to me, however, that the prosecutor did everything that was required by Practice Book § 38-29 when he gave a clear and unambiguous statement in open court of the specific reasons that each of the four cases was being nolled. He was not required to give those reasons and then to dispel all possible doubt about the reasons for the nolles by reiterating that the specific reason that he gave for the nolle in each case was, in fact, the reason for that nolle. Nor was the prosecutor required to explain to the defendant that the unilateral nolles did not bar the state from reinstituting the charges if the circumstances changed.[14] In any event, the defendant has made no claim that he did not understand the effect of a unilateral nolle.

It is clear to me, therefore, that the majority is allowing the defendant, in light of a subsequent change in circumstances, to substitute his hindsight view of what he should have done—request the state to nolle all four cases in exchange for a charitable contribution to the victim's fund—for what, as far as the transcript of the disposition hearing reveals, the parties actually agreed to do—nolle the drug case in exchange for a charitable contribution and nolle the other three cases for entirely distinct reasons, none of which barred the reinstitution of the underlying charges in those three cases if circumstances changed.[15] In doing so, the majority has entirely ignored the fact that the disposition agreement, as reflected in the transcript of the disposition hearing, involved trade-offs, and, instead, it has given effect to the terms of both the abandoned plea agreement and the substituted disposition agreement that favor the defendant, while nullifying the favorable terms for which the state bargained. In my view, it is not the role of this court to retroactively change the terms of a clear and unambiguous disposition agreement that is otherwise enforceable merely because subsequent developments have triggered a term that disfavors the defendant.

Because I believe that the transcript of the disposition

hearing shows clearly and unambiguously that the prosecutor unilaterally nolled the burglary case, I would conclude that there is no bar to the reinstitution of those charges in the present case. Accordingly, I would reverse the judgment of the Appellate Court reversing the trial court's judgment of conviction following its denial of the defendant's motion to dismiss, and I would direct that court to uphold the judgment of conviction. I therefore dissent.

[1] Because I conclude that the intent of the disposition agreement was clear and unambiguous, I need not determine whether the majority correctly concludes that the standard of review of Judge Alander's decision denying the defendant's motion to dismiss is plenary because the ruling was based solely on his interpretation of the written transcript of the disposition hearing, and not on the live testimony of witnesses, and that any ambiguities in the disposition agreement must be resolved against the state. Even if I were to assume that those standards are correct, I would affirm Judge Alander's ruling denying the motion to dismiss.

[2] See Practice Book § 39-5 ("[t]he parties may agree that the defendant will plead guilty or nolo contendere on one or more of the following conditions . . . [2] [t]hat the prosecuting authority will nolle . . . certain other charges against the defendant").

[3] Judge Kahn stated at the September 22, 2011 hearing that she "was hesitant to engage in the plea negotiations because [she] was going to be the trial judge . . . ."

[4] Practice Book § 39-29 provides: "A prosecuting authority shall have the power to enter a nolle prosequi in a case. It shall be entered upon the record after a brief statement by the prosecuting authority in open court of the reasons therefor."

[5] In addition, the prosecutor stated later in the proceeding that "in the [burglary case] the codefendant . . . is dead. The victim can't be found. That case as it stands today is unprovable."

[6] Presumably, the prosecutor was referring to the Criminal Injuries Compensation Fund, the statutorily authorized victim's compensation fund. See General Statutes § 54-215.

[7] See *State* v. *Pieger*, 240 Conn. 639, 653, 692 A.2d 1273 (1997) (order that defendant make charitable contribution was authorized by General Statutes [Rev. to 1995] § 53a-30 [a] [12], [now General Statutes § 53a-30 (17)], under which court has authority to impose as condition on discharge that defendant "satisfy any other conditions reasonably related to his rehabilitation"); *See* v. *Gosselin*, 133 Conn. 158, 161, 48 A.2d 560 (1946) ("a nolle does necessarily imply a discharge").

[8] Although Judge Kahn did not expressly refer to the burglary case, that was the only case in which the prosecutor explained that it was being nolled because of problems of proof.

[9] It is possible that the prosecutor intended to refer to the burglary case. See footnote 5 of this dissenting opinion.

[10] See *Mason* v. *State*, 302 Md. 434, 440, 488 A.2d 955 (1985) (nolle as part of plea agreement is tantamount to dismissal of nolled charge).

[11] See *State* v. *Lloyd*, 185 Conn. 199, 201, 440 A.2d 867 (1981); Practice Book § 39-31 ("The entry of a nolle prosequi terminates the prosecution and the defendant shall be released from custody. If subsequently the prosecuting authority decides to proceed against the defendant, a new prosecution must be initiated.").

[12] I would note that the prosecutor stated at the September 22, 2011 hearing that "[p]erhaps the drug case changed significantly when [the codefendant] died and [the victim] was unavailable." But see footnote 9 of this dissenting opinion.

[13] General Statutes § 54-36a (b) (2) provides in relevant part: "If the seized property is stolen property, within ten days of the seizure, the law enforcement agency seizing the property shall notify the owner of the property if known, or, if the owner of the property is unknown at the time of seizure, such agency shall within ten days of any subsequent ascertainment of the owner notify such owner, and, on a form prescribed by the Office of the Chief Court Administrator, advise the owner of such owner's rights concerning the property and the location of the property. Such written notice shall include a request form for the return of the property. The owner may request the return of the property by filing such request form with such law enforcement

agency, and upon receipt of such request, the law enforcement agency shall forward it to the clerk of the court for the geographical area in which the criminal offense is alleged to have been committed. The clerk of the court shall notify the defendant or defendants of the request to return the property. The court shall order the return of the property within thirty days of the date of filing such return request by the owner, except that for good cause shown, the court may order retention of the property for a period to be determined by the court. Any secondary evidence of the identity, description or value of such property shall be admissible in evidence against such defendant in the trial of such case. The fact that the evidence is secondary in nature may be shown to affect the weight of such evidence, but not to affect its admissibility. . . .''

[14] Because a guilty plea involves the waiver of important constitutional rights, the defendant must be canvassed by the court to ensure that the plea is knowing and voluntary. See *State* v. *Domian*, 235 Conn. 679, 687, 668 A.2d 1333 (1996) (''the federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of the three core constitutional rights [implicated by the guilty plea]'' [internal quotation marks omitted]). I am aware of no comparable requirement that a prosecutor advise the defendant of the legal effect and consequences of a unilateral nolle, which does not require the defendant to waive any constitutional rights. Although providing such an explanation is arguably the better practice if the prosecutor has any reason to believe that the defendant lacks knowledge on that matter, that presumably would not be the case when the defendant is represented by counsel.

[15] As I have indicated, the defendant has made no claim that he agreed to the new disposition because he did not realize that a unilateral nolle would allow the state to reinstitute the charges. Even if the defendant had made such a claim, however, the remedy for a unilateral mistake ordinarily is not to reform the contract to conform to the mistaken party's intent, but, at most, to void the contract. See *Bender* v. *Bender*, 292 Conn. 696, 730–31, 975 A.2d 636 (2009) (''[t]he mistake of [only one] of the parties inducing him to sign a contract which, but for the mistake, he would not have entered into, may be a ground in some cases for cancelling the contract'' [internal quotation marks omitted]).