******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* SAMUEL A. RIVAS, JR.
## (AC 47400)

Alvord, Westbrook and Wilson, Js.

*Syllabus*

Convicted, following a conditional plea of nolo contendere, of the crime of operating a motor vehicle while under the influence of alcohol or drugs, the defendant appealed. He claimed, inter alia, that the trial court improperly denied his motion to dismiss because the state's seven month delay in executing its arrest warrant violated his right to due process. *Held*:

The trial court properly denied the defendant's motion to dismiss, as the defendant failed to present the court with a sufficient factual record to demonstrate that he suffered actual, substantial prejudice as a result of the state's preaccusation delay and, thus, a violation of his right to due process..

The prosecution of the defendant for operating a motor vehicle while under the influence of alcohol or drugs did not violate his prior plea agreement with the state as to a charge of interfering with an officer that arose out of the same criminal incident, the defendant having presented no evidence to establish a reasonable belief that the plea agreement had terminated all of his criminal liability flowing from his conduct during that same incident.

Argued April 14—officially released July 1, 2025

*Procedural History*

Information charging the defendant with the crime of operating a motor vehicle while under the influence of alcohol or drugs and with improper use of a registration, brought to the Superior Court in the judicial district of New London, geographical area number twenty-one, where the court, *Hon. Arthur C. Hadden*, judge trial referee, denied the defendant's motion to dismiss; thereafter, the defendant was presented to the court, *Hon. Arthur C. Hadden*, judge trial referee, on a conditional plea of nolo contendere to the charge of operating a motor vehicle while under the influence of alcohol or drugs; judgment of guilty; subsequently, the state entered a nolle prosequi as to the remaining charge, and the defendant appealed to this court. *Affirmed.*

*Ruth Burke*, deputy assistant public defender, with whom, on the brief, was *Jennifer Bourn*, chief of legal services, for the appellant (defendant).

*Rebecca R. Zeuschner*, deputy assistant state's attorney, with whom, on the brief, were *Paul J. Narducci*, state's attorney, and *Sarah Bowman*, assistant state's attorney, for the appellee (state).

*Opinion*

WESTBROOK, J. The defendant, Samuel A. Rivas, Jr., appeals from the judgment of conviction rendered following his conditional plea of nolo contendere to the charge of operating a motor vehicle while under the influence of alcohol or drugs in violation of General Statutes § 14-227a.[1] On appeal, he claims that the trial court improperly denied his motion to dismiss the charge because (1) the state's delay in executing the warrant for his arrest (preaccusation delay) violated his right to due process, and (2) the prosecution violated an earlier plea agreement he had entered into with the state.[2] We disagree and, accordingly, affirm the judgment of the court.

---

[1] General Statutes § 14-227a provides in relevant part: "(a) . . . No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. . . ."

The defendant also was charged with improper use of a registration in violation of General Statutes § 14-147 (c). The state entered a nolle prosequi as to that charge.

[2] In his principal appellate brief, the defendant sets forth three claims: the trial court improperly (1) declined to rely on representations by counsel and information in the court file in considering whether the preaccusation delay violated his due process rights; (2) failed to conclude that the preaccusation delay violated his due process rights; and (3) determined that the prosecution did not violate the defendant's prior plea agreement. Because the first two claims are sufficiently interrelated, for ease of discussion, we address those claims together.

The following facts, as stated by the prosecutor at the time that the defendant entered his conditional plea of nolo contendere, and procedural history are relevant to this appeal. "[On] March [3, 2022], [at] approximately 10:30 p.m., officers . . . observed a gray Lexus stuck sideways . . . in the middle of the roadway. A check revealed that the registration did not belong to that type of vehicle. Emergency lights were initiated . . . [and] officers approached the operator side of the vehicle. They observed a male later identified as this defendant seated in the driver's seat, keys in the ignition, [and] the] engine on. Officers knocked on the driver's side window. The [defendant] opened the door. He looked at the police officers. Officers observed his eyes to be bloodshot and glossy.

"[The] defendant started to exit the vehicle. Immediately, officers asked him to stay in the driver's seat. He continued to stand up and get out of the vehicle. Officers observed the defendant to be off balance and confused, [he] stated, what, and puffed out his chest [and] then made a fist with both of his hands. His speech was slow, slurred, and incoherent at times. Officers attempted to talk to the defendant and gather details of what was going on; however, the defendant was very agitated [and] appeared to stare off in the distance. Again, the defendant put his hands in the front pocket of his hooded sweatshirt. He was asked to remove his hands. He did not comply.

"The defendant walked toward the officers, stood immediately in front of [one officer], appeared disoriented, and had difficulty with speech. At that time, he then stated to the officer . . . I run this shit, made a fist with his hands, and swung at the officer in an attempt to punch the officer in his face. At that time, other officers attempted to subdue this defendant. The defendant continued to resist the officers as he tensed his

body when being placed in the cruiser; a struggle did ensue.

"While en route to the police station, the defendant fell asleep in the cruiser. Upon being asked to exit the cruiser on arrival, he was agitated, tensed his body, perspiring, had a dry mouth, and then appeared to become lethargic again, and [his] eyes glazed over. He had a blank stare and dazed appearance. After several minutes, the defendant stood up out of the vehicle and became paranoid. He was staring off and saying, no, no. several times. [He] [a]ppeared to be hallucinating, as he was not talking to any of the officers as he was saying that.

"The defendant was assisted into the booking area. [The officers] attempted to communicate with him but, due to his current state at that time, they were unable to perform standard field sobriety tests. They determined at that time, due to his level of impairment, he would be transported to [a hospital]. At the . . . emergency room, the defendant slipped in and out of consciousness, was confused and lethargic, unaware of his surroundings, and could not provide basic information. . . . [At] approximately 3:30 a.m., the defendant became alert and was able to take part in normal conversation. Officers at that time determined he was able to provide information, [they] read him his [*Miranda*][3] rights and asked him questions according to that time.

"The defendant stated that he had used [phencyclidine (PCP)] earlier in the night, [but he] did not give an exact time or location. The officer was a trained drug recognition expert. PCP is a dissociative anesthetic, and [the officer] recognized [that] the signs of impairment that the defendant was exhibiting were in fact signs of that drug. They did order a urine record or

---

[3] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

test; however, one of the medical professionals at [the hospital] cancelled that.'' (Footnote added.)

While the defendant remained at the hospital, the state charged him with one count of interfering with an officer in violation of General Statutes § 53a-167a[4] on the basis of his conduct during the arrest on March 3, 2022. He was released on a nonsurety bond. Subsequently, in a separate case, the state charged the defendant with, inter alia, interfering with an officer on the basis of an incident on March 5, 2022. On March 7, 2022, the defendant appeared in court on both cases. See *State* v. *Rivas*, Superior Court, judicial district of New London, geographical area number twenty-one, Docket Nos. K-21-NCR-22-0165591-S and K-21-NCR-22-0165592-S. The court, *K. Murphy, J.*, released the defendant on a conditional promise to appear.

On April 1, 2022, the state sought an arrest warrant, which is the subject of the present matter, charging the defendant with operating a motor vehicle while under the influence of alcohol or drugs in violation of § 14-227a and improper use of a registration in violation of General Statutes § 14-147 (c)[5] in connection with the March 3, 2022 incident. On April 4, 2022, the court issued a warrant for the defendant's arrest on these charges. The police, however, did not execute the arrest warrant at that time.

[4] General Statutes § 53a-167a provides in relevant part: ''(a) A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties. . . .''

Although § 53a-167a (a) has been amended since the events at issue; see Public Acts 2022, No. 22-117, § 12; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[5] Although § 14-147 (c) has been amended since the events at issue; see Public Acts 2023, No. 23-40, § 16; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

It is undisputed that, on September 20, 2022, the defendant, pursuant to a plea agreement, pleaded guilty to two counts of interfering with an officer in violation of § 53a-167a for his conduct on March 3 and 5, 2022 (plea agreement). The court, *Papastavros, J.*, accepted the defendant's pleas and sentenced him to a total effective term of seven months of incarceration. It is also undisputed that, at the time of the sentencing, the defendant had other criminal charges pending against him in several jurisdictions in Connecticut.

On November 23, 2022, the defendant was released from custody. That same day, the police executed the April 4, 2022 warrant and arrested the defendant on charges of operating a motor vehicle while under the influence of alcohol or drugs and improper use of a registration.

On December 8, 2023, the defendant filed a motion to dismiss the charges. In the motion, he first argued that the police had unreasonably delayed the execution of the April 4, 2022 arrest warrant in violation of his due process rights. He additionally argued that the charges violated the earlier plea agreement, which he claimed encompassed all criminal liability flowing from the March 3, 2022 incident. In opposition to the defendant's motion to dismiss, the state argued that, considering the defendant's then pending cases in other jurisdictions in Connecticut, the preaccusation delay was neither unreasonable nor prejudicial. The state additionally argued that the charges of operating a motor vehicle while under the influence of alcohol or drugs and improper use of a registration did not violate the earlier plea agreement because those motor vehicle charges were separate from and unrelated to the earlier charges for interfering with an officer.

On January 18, 2024, following oral arguments, the court, *Hon. Arthur C. Hadden*, judge trial referee,

denied the defendant's motion to dismiss on the record. The court stated: "There's been no evidentiary hearing, there's been no evidence presented. Given that, the court cannot make any factual findings. Keep in mind that the statements of counsel, either verbal or in writing, in a memorandum of law, are not evidence and cannot be the basis for the court making findings of facts. So, all of the comments that have been made regarding the facts of this case have never been established to this court. So, the court cannot make findings of fact, and therefore cannot apply the law to the facts, because, as things stand at this moment, there are no facts before this court. So, the motion must be dismissed on that basis alone.

"In the alternative . . . based on the arguments that counsel have provided, the precedents that have been cited [related to preaccusation delay] do not appear to apply to this particular case, which does not involve a statute of limitations issue. As far as the plea agreement and the claim of lack of due process, and the claim that there was a single plea agreement, that is also not appropriate in this instance. . . . [T]he defendant was charged with interfering with a police officer based upon his conduct subsequent to a motor vehicle stop, both at the scene of [the] stop and later on at the police station. That's totally separate and distinct from the operation of the motor vehicle and the offense[s] that arose from the operation of the motor vehicle. . . . They are separate incidents at separate times. . . .

"So, [the] motion is denied based upon the fact that I have no factual basis, [and] I have no ability to make findings of fact. In the alternative, I would also indicate that I do not believe the precedent set by the cases cited applies to this case because it is not a case where the statute of limitations is involved, and it is also not a case where there was a single incident."

Later that day, the defendant entered a conditional plea of nolo contendere to operating a motor vehicle while under the influence of alcohol or drugs. The court subsequently sentenced him to six months of incarceration, execution suspended after the mandatory forty-eight hours to serve, followed by one year of probation. This appeal followed.

As a threshold matter, we set forth the standard of review governing our resolution of this appeal. "Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Schimanski*, 344 Conn. 435, 447, 280 A.3d 92 (2022).

I

The defendant first claims that the trial court improperly denied his motion to dismiss because the preaccusation delay violated his right to due process. We conclude that the defendant did not present a sufficient factual basis to demonstrate a due process violation.

The following legal principles are relevant to our resolution of this claim. "The role of due process protections with respect to preaccusation delay has been characterized as a limited one. . . . [T]he [d]ue [p]rocess [c]lause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. . . . This court need only determine whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and

political institutions . . . and which define the community's sense of fair play and decency . . . . The due process clause has not replaced the applicable statute of limitations . . . [as] . . . the primary guarantee against bringing overly stale criminal charges. . . .

"[T]o establish a due process violation because of preaccusation delay, the defendant must show both that actual substantial prejudice resulted from the delay and that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant. . . . [P]roof of prejudice is generally a necessary but not sufficient element of a due process claim . . . . [Additionally] the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." (Internal quotation marks omitted.) *State* v. *Coleman*, 199 Conn. App. 172, 180, 235 A.3d 655, cert. denied, 335 Conn. 966, 240 A.3d 281 (2020).

In the present case, the defendant argues that the court "erred in declining to rely on uncontested representations of counsel about the procedural history of the case and information in the court file as the factual basis for the legal arguments relevant to the motion to dismiss." He contends that "the preaccusation delay of seven months that ran concurrent with . . . the eight month prosecution of [the defendant] for crimes arising out of the same criminal episode caused actual, substantial prejudice in his ability to negotiate and knowingly enter his [earlier] guilty plea without notice that [his] conduct [on March 3, 2022] . . . was subject to a separate, pending prosecution." He further asserts that "[t]he prejudice suffered in this case manifested as a disadvantage in [his] bargaining power, contradicted his reasonable expectation that his [September 20, 2022] plea severed all subsequent criminal liability, and damaged his ability to defend himself in both the initial and the subsequent prosecution." We are not persuaded

that the defendant has presented sufficient evidence to support his allegations of prejudice.

Our case law is clear that the defendant bears the burden of "develop[ing] a record showing the reasons for the delay and that he suffered actual prejudice because of the delay. Only after the defendant has made some indication on the record that the delay was wholly unjustifiable and that he suffered actual prejudice because of the delay can [this court] review the defendant's claim to determine whether, in fact, a constitutional violation exists." *State* v. *Gay*, 87 Conn. App. 806, 813–14, 867 A.2d 26, cert. denied, 273 Conn. 930, 873 A.2d 999 (2005). Conclusory statements concerning the cause or effect of the preaccusation delay are insufficient to "substantiate either of these requirements." *State* v. *Morrill*, 197 Conn. 507, 522, 498 A.2d 76 (1985); id. (holding that trial court properly denied defendant's motion to dismiss because there was "a complete absence of proof concerning the cause or effect of the [preaccusation] delay"); see also *State* v. *Haynes*, 8 Conn. App. 361, 364, 513 A.2d 160 (1986) (holding that trial court properly denied defendant's motion to dismiss because "[n]o facts or evidence were ever presented to the court to substantiate" claim that preaccusation delay "prejudiced the defendant or was, in any way, connected to obtaining a tactical advantage over him by the state").

The defendant in the present case presented no evidence to the trial court to demonstrate that he had suffered actual substantial prejudice as a result of the preaccusation delay. Although defense counsel argued before the trial court that the delay prejudiced his ability to negotiate the earlier plea agreement and that evidence relevant to the present case was ordered destroyed at the September 20, 2022 proceeding,[6] "mere

_____

[6] The defendant argues that he suffered prejudice as a result of the preaccusation delay because evidence relevant to the present case was destroyed after he pleaded guilty to interfering with an officer. To establish that evi-

representations by counsel are not evidence." *State* v. *Hanna*, 19 Conn. App. 277, 278, 562 A.2d 549 (1989). Thus, the trial court properly concluded that the defendant had failed to present a factual record to demonstrate that the preaccusation delay violated his right to due process.

## II

The defendant alternatively claims that the trial court improperly denied his motion to dismiss because the prosecution for operating a motor vehicle while under the influence of alcohol or drugs violated his earlier plea agreement. He argues that the state, in reaching the earlier plea agreement, "induced the defendant to reasonably believe that no further criminal liability would flow from the same incident" and that the court

dence was destroyed, the defendant requests that this court take judicial notice of the transcript from his September 20, 2022 proceeding, during which he pleaded guilty to interfering with an officer. "The doctrine of judicial notice is not a hard and fast one. It is modified by judicial discretion. . . . Courts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends on the nature of the subject, the issue involved and the apparent justice of the case." (Emphasis omitted; internal quotation marks omitted.) *Arriaga* v. *Commissioner of Correction*, 120 Conn. App. 258, 264, 990 A.2d 910 (2010), appeal dismissed, 303 Conn. 698, 36 A.3d 224 (2012). "As a general rule, this court will not take judicial notice of facts that were not available to the trial court," including transcripts of separate proceedings that the defendant failed to bring to the attention of the trial court. *State* v. *Siano*, 20 Conn. App. 369, 375, 567 A.2d 1231 (1989), aff'd, 216 Conn. 273, 579 A.2d 79 (1990).

In the present case, although the defendant raised this argument during the motion to dismiss hearing, he never presented the transcript to the trial court. We, therefore, decline to take judicial notice of the transcript on appeal for the purpose of supplementing the factual record, including whether evidence was destroyed. See id., 376 ("[b]ecause the trial court was unaware of this transcript and because it did not contain generally known facts, we will not take judicial notice of it"); see also *Moore* v. *Commissioner of Correction*, 227 Conn. App. 487, 519, 321 A.3d 470 (declining to take judicial notice of transcripts and court file from underlying criminal case because "we cannot . . . take judicial notice of materials for the purpose of weighing evidence and inferring facts"), cert. granted, 350 Conn. 924, 326 A.3d 247 (2024).

improperly determined that the present case is distinguishable from *State* v. *Nelson*, 23 Conn. App. 215, 579 A.2d 1104, cert. denied, 216 Conn. 826, 582 A.2d 205 (1990), cert. denied, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991). We disagree that the prosecution for operating a motor vehicle while under the influence of alcohol or drugs violated the earlier plea agreement.

We begin our analysis by setting forth the relevant legal principles governing plea agreements. "Plea agreements are an essential and necessary part of the administration of justice . . . . This essential tool of the criminal justice system will lose its efficacy if the state's performance of the agreement is contrary to the reasonable expectations of the defendant. . . . Because a defendant waives several constitutional rights when [she] elects to plead guilty to a criminal offense, the choice of a guilty plea is of profound significance. . . . If the state makes promises to the defendant in order to induce a guilty plea, those promises must be fulfilled . . . and [t]he breaking of a promise made by the prosecutor as a result of plea negotiations is sufficient to invalidate a conviction." (Citations omitted; internal quotation marks omitted.) Id., 218–19.

"It is well settled that [p]rinciples of contract law and special due process concerns for fairness govern our interpretation of plea agreements. . . . [T]he primary goal of contract interpretation is to effectuate the intent of the parties . . . . In ascertaining that intent, we employ an objective standard and look to what the parties reasonably understood to be the terms of the plea agreement on the basis of their words and conduct, and in light of the circumstances surrounding the making of the agreement and the purposes they sought to accomplish." (Citations omitted; internal quotation marks omitted.) *State* v. *Kallberg*, 326 Conn. 1, 14–15, 160 A.3d 1034 (2017).

In *Nelson,* "the defendant was driving . . . when she lost control of her vehicle . . . and struck . . . [the] victim . . . . The defendant . . . was subsequently charged, inter alia, with assault in the second degree with a motor vehicle . . . . [Before trial] defense counsel, the state's attorney and . . . the attorney who represented the victim and his family, met in a pretrial conference with the trial judge in his chambers to discuss a plea agreement. At that conference, [the attorney for the victim and his family] informed all present that the victim was still hospitalized in grave condition and that he might not live. At the conclusion of the conference, the trial judge indicated that he would accept the plea. The defendant then pleaded guilty to the assault charge pursuant to the agreement." *State* v. *Nelson,* supra, 23 Conn. App. 216. "The victim [subsequently] died from his injuries . . . [and] a warrant was issued for the defendant's arrest on the charge of manslaughter in the second degree with a motor vehicle. The defendant moved to dismiss the information on the grounds that . . . the state had waived any rights to bring additional charges when it agreed to the [earlier] plea bargain. . . . The [trial] court concluded that it would not hold the state to predicting the victim's death, and it denied the motion to dismiss." Id., 217.

On appeal, "the defendant argue[d] that the agreement under which she pleaded guilty to assault barred her reprosecution on a manslaughter charge because, in bargaining for the plea, the state induced in her a reasonable belief that no further charges would be brought if the victim were to die. She argue[d] that the second prosecution thus violated her due process guarantees." Id., 217–18. In considering this claim, this court stated: "Where, as here, there is a dispute as to the terms of a plea agreement, our analysis turns on the real intent of the parties, and most significantly, of [the defendant] . . . . The defendant argues that she

reasonably believed that the plea agreement terminated all her criminal liability flowing from the accident. Despite the state's silence as to what would happen if the victim died, its conduct strongly implied that it shared the defendant's interpretation of the plea agreement. The trial court found that the parties were aware of the victim's precarious condition. While it is true that at the sentencing hearing the victim's mother spoke of his eventual recovery, the state and the defendant had to be aware that this was by no means a certainty. *Under the circumstances*, it was incumbent upon the state to enunciate what was and was not covered by the agreement lest the defendant be allowed to go to plea under the impression that the criminal portion of this tragic episode was closed. If the state was reserving a right to reprosecute in the event of the victim's death, it could have, and should have, said so. It did not even remotely imply that this was its intent.

"We take particular note of the fact that, at the conclusion of the [earlier] sentencing, the state moved to have certain evidence in the case destroyed. . . . The destruction of any evidence seized at a crime scene is consistent with a belief that no further charges will be brought and lends credence to the defendant's claim that she reasonably believed her plea ended her criminal liability. Furthermore, we think it significant that the parties agreed to a specific term of imprisonment. We question whether the defendant would have given her assent to a prison term if she thought that additional, more serious charges could be brought later." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 219–20. The court concluded that, "[u]nder the facts of this case . . . it would be unjust to the defendant for us to vacate her plea when she has already been punished for the crime to which [she] confessed." (Internal quotation marks omitted.) Id., 220–21. This court, therefore, reversed the defendant's

judgment of conviction of manslaughter in the second degree with a motor vehicle. Id., 221.

The defendant argues that the present case is similar to *Nelson* because, (1) "at the time of the interfering guilty plea, the state moved for evidence to be destroyed"; (2) "the parties agreed to a specific term of seven months of imprisonment at the initial plea"; and (3) "the state, during the prosecution of the interfering charge and negotiation of the plea, never implied or indicated to the court or defense counsel that it was its intent to bring additional charges arising from the incident." We are not persuaded.

In the present case, the defendant's conduct during the March 3, 2022 incident gave rise to different types of criminal liability. The charge of operating a motor vehicle while under the influence of alcohol or drugs was based on, inter alia, the following observations of the police officers present on March 3, 2022: the defendant's vehicle was stopped in the middle of a roadway; the defendant was in the driver's seat of the vehicle with the ignition turned on; the defendant admitted to an officer that he had used PCP earlier that evening; and the defendant exhibited behavior and symptoms consistent with PCP use. Additionally, the defendant had previously pleaded guilty to two counts of interfering with an officer, one of which was premised on, inter alia, the following observations of the officers present on March 3, 2022: the defendant did not comply with the officers' orders to remain in his vehicle and to remove his hands from his pocket; the defendant made fists with his hands and puffed out his chest; the defendant stated, "what," and, "I run this shit," to the officers; the defendant attempted to punch an officer in the face; and the defendant struggled against the officers while they placed him in the patrol car and when they asked him to exit the patrol car at the station. As this court indicated in *Nelson*, the issue of

whether the subsequent prosecution violated the earlier plea agreement turns on the intent of the defendant and the state in entering into the agreement.

Unlike the defendant in *Nelson*, the defendant in the present case has not presented any evidence to suggest that he reasonably believed that his earlier plea agreement, which concerned only interfering with an officer, terminated *all* his criminal liability flowing from his conduct on March 3, 2022. He has not, for example, identified any statements or conduct by the state during the plea negotiations implying that it would not separately prosecute the defendant for additional criminal liability related to his operation of the motor vehicle. Although the defendant asserts that the state moved to destroy evidence related to the present case at the time that he pleaded guilty to interfering with an officer, the defendant has not provided a sufficient factual basis for this allegation. See footnote 6 of this opinion. Even if the fact that the defendant agreed to a specific term of imprisonment supports a belief that the earlier plea agreement covered all criminal liability arising from the March 3, 2022 incident, the defendant has failed to present any evidence that the state induced that belief. Moreover, the fact that the state did not enunciate its intention to prosecute the defendant for additional criminal liability does not, by itself, give rise to a reasonable belief that it would not do so. See *In re Keijam T.*, 226 Conn. 497, 507, 628 A.2d 562 (1993) (rejecting as overbroad defendant's argument that, pursuant to *Nelson*, "the state is estopped from charging a greater offense than that pleaded to in relation to a particular incident if the state has failed to reserve the right to future prosecution in a plea agreement").

Because the defendant has not presented any evidence to establish a reasonable belief that the earlier plea agreement terminated all his criminal liability flowing from his conduct on March 3, 2022, we conclude

that the prosecution for operating a motor vehicle while under the influence of alcohol or drugs did not violate the earlier plea agreement. Therefore, the trial court properly denied the defendant's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.